UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
EMPRESS HADIYA BEY,

                    Plaintiff,

           - against -

JOSEPHINE ANTOINE; JOSEPH
SCHWARCZ; NOSSON (NATHAN)
SCHWARCZ; ENRIQUE 'RENE' RIVERA;
DAVID FRIEDMAN; YOEL GOLDMAN;
JACQUELINE D. WILLIAMS; ELIZABETH
BARNETT; JOE MORGANO, ESQ.;
AMANDA G. KATZ, ESQ.; ALAN SPUTZ,
ESQ.; DEANNA FLAHERTY, ESQ.;
ANDREW LEE, ESQ.; TIMOTHY MARSH,
ESQ.; STEPHEN SCHWARCZ, ESQ.;
ABENA DARKEH; ERIC GONZALEZ, ESQ.;
MEENA SERALATHAN, ESQ.; REBECCA
MITCHELL; ALICIA FRISCH #23972;
MICHAEL MANCILLA #23627; MICHELLE
GIGLIO (77th Command); TODDMAN
#20869; GELLINEAU #15315; SGT.
QUINTERO #5330; EPSTEIN #15092; SGT.
SANDRINA OSBORNE (77th Command);
LIEUTENANT PETER SOTIRIOUI (77th
Command); LETITIA JAMES; ERIC L.
ADAMS; DAVID A. HANSELL; WILLIAM
HARRINGTON; ALYSON THOMPSON;
TIFFANY HICKS; CHERYL BENDER;
CHERYL PLACE; IRIS SANCHEZ; L.
VEGA; K. MACK; JANE DOE #1; RENEE
PINKNEY; LANDAI BARNES; ALAKEEM
ADEKOYA; BARBARA FAMOSA;
KOLAWOLE KAREEM; DIREEN
PATTERSON; SAVANNAH LILY; KELLI
MUSE; JACQUES JIHAD; ERIC ENDERLIN;
PRINCESS PALMER; ROBERT EZRAPOUR;
KEN HARON; JOSEPH SOLEIMANI; BEN
SOLEIMANI; JASON HAITKIN;
ANCHILLES PERRY; MICHAEL
PARLAMIS; MICHAEL KOROGLUYEV;
SANDY KOROGLUYEV; PAULA
BENJAMIN-HOWARD; JEFFREY R.

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**
19-CV-1877 (PKC) (RER)

STERN; ALIA RAZZAQ; JOHN
BUTTACAVOLI; STEVEN BANKS; BILL
DE BLASIO; RICHARD A. CARRANZA;
LAZARO VALDEZ; TRACY KITT; LIND
FORD; JENNIFER GOLDSTEIN; GUTMAN,
MINTZ, BAKER & SONNETFELDT, LLP;
ANDREW CUOMO; SCOTT STRINGER;
SHELIA J. POOLE; HELENE MARCEL;
HEATHER ANWER; MIRIAM VASQUEZ;
YESSENA FIGEROA; HOPELEE HOBSON;
FRANCES CARR; KETA. SAUNDERS;
GRISEL CABAN; CAROL JOIDAN; JACK
BOWDEN; DENNIS BURTON; ANDREA
DARELL; PETRA LEGETTE; LEATHA
JENNINGS; DOMINIQUE MANFREDA;
FELIX PADILLA; MELANIE ALVES; ZARA
SHEIKH; FLORENCE BERMAN; SUSAN
PERSAUD; ROBIN ALEXANDER;
ANNETTE DAVILLA, SHAKEISKA
JACKSON; ANTERNET BROWN;
SHAVONDA JONES; GINA SARUBBI; LUIS
VANUCCI;SHAUNDA JOHNSON; KALILA
NELSON; MICHELLE De La CRUZ;
CANIECE BENOIT; ATHENA BASS;
JACQUELINE PAYNE; LYNETTE LIPSEY-
HUGHES; HOLLY CHAMBERS; SODELYN
JOSEPH; HADDIE BRATHWAITE; JACK
BOWDEN; VILMA BOWDEN; TOLANI
EPEMOLU; TAIESHA COLEMEN; PEGUY
PIERROT; SHEBANA FAKIRA; LOUIS
DOBBS-ROSE; SHARICE SCOTT; SONIA
RICKETTS-HUBBA; CLARISSA SEALY;
CHEVELLE ROBINSON; BEHAL #10727;
DEPUTY DIRECTOR VARGAS; CPS
ANWANA; CPS EMMANUEL; SERGEANT
FITZGERALD; SANTOS #17728; FERACA
#28279; RUSSELL #19390; TERESA
JOHNSON-HALE; JACQUELINE
COLEMAN; OFFICER ROKE (77th
Command); MARIANNE WHITFIELD;
LINDEN BRITTON; LIEUTENANT CHANG
(77th Command); MARCIA JOHNSON;
ANGELBERTH EZEOGU; DACIA CARTER;
TIFFANY GENTLE; KALELILIA
HAMILTON; SHANIQUA BROWN; ALLEN
WAYNE; MR. LACEWELL; MARITZA

VALEZ LUYANDO; M. KLEIDMAN;
SERGEANT SHEA; COURT OFFICER
#6768; MS. BRIANNA; ANDREW
GALLISHAW-KING, ZACHARY W.
CARTER, A. BABB, CYNTHIA ROBINSON,
ROSE MCCREA, and DAN HARON,

Defendants.

-------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Plaintiff Empress Hadiya Bey, proceeding *pro se*, commenced the above-captioned action on March 27, 2019, against 96 state, municipal, and individual Defendants seeking their criminal prosecution. (Dkt. 1.) By Order dated April 22, 2019, the Court granted Plaintiff's application to proceed *in forma pauperis,* dismissed her criminal prosecution claims, and granted Plaintiff 30 days to file an amended complaint setting forth any plausible 42 U.S.C. § 1983 claims. (Dkt. 6.) Plaintiff filed an amended complaint naming 157[1] Defendants on May 17, 2019. (Dkt. 7.) For the reasons stated below, the Court *sua sponte* dismisses Plaintiff's claims against all Defendants except Defendants Antoine, Caban, Quintero, Toddman, Gellineau, Epstein, Roke, Mancilla, Shea, and Court Officer #6768, for alleged Fourth Amendment violations.

## BACKGROUND

In her amended complaint, Plaintiff sets forth an elaborate narrative involving the Administration of Children's Services ("ACS"), Brooklyn Family Court, the police, other state civil and criminal courts, and her landlords and other members of her building management

---

[1] Plaintiff includes two different lists of Defendants, one list with names only (Am. Compl., Dkt. 7, at ECF 3–10) and one list with names and addresses (Am. Compl., Dkt. 7, at 10–54). The Court notes that though most of the names are the same, there are a few differences between the two lists. For purposes of this Order, the Court has accounted for every Defendant named on either list.

company.[2]  Though most of Plaintiff's allegations do not describe a cognizable claim under federal law, several of these incidents do appear to support various Fourth Amendment claims against several ACS workers and New York City Police Department ("NYPD") officers.  These incidents are described in further detail herein.[3]

On May 2, 2018, NYPD officers Quintero, Toddman, Gellineau, and Epstein, and ACS workers Antoine and Caban "illegally" entered Plaintiff's apartment.  (Amended Complaint ("Am. Compl."), Dkt. 7, ECF[4] 64.)  A few days prior, on April 27, 2018, ACS worker Antoine went to Family Court to secure an entry order pursuant to Family Court Act ("FCA") § 1034, but that order was never signed by a judge.  (*Id.*)  On May 2, 2018, without any warrant, police officers entered Plaintiff's apartment through a kitchen window, located off the fire escape, after Plaintiff refused to allow the officers and ACS workers to enter through her front door.  (*Id.*)  One of the two officers who entered through the kitchen window made Plaintiff and her children stay in the living room while the other officer opened the front door for the other police officers and ACS workers.  (*Id.*

___

[2] The Court notes that it has the power, under Federal Rule of Civil Procedure 8, to dismiss Plaintiff's amended complaint if it "does not comply with the requirement that it be short and plain."  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).  However, given that "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised," *id.* (citations omitted), the Court finds that Plaintiff has provided a sufficiently coherent, though excessively detailed, account of her alleged claims to allow the Court to consider her amended complaint.

[3] The facts set forth in this section are based on the allegations in the amended complaint, which the Court accepts, as it must, as true for the purposes of this Order.  *See Lawrence v. Suffolk Cty. Police Dep't*, No. 13-CV-2357 (JS) (WDW), 2013 WL 3364344, at *1 (E.D.N.Y. June 28, 2013) (noting that "in reviewing a *pro se* case for *sua sponte* dismissal, a court should assume that all allegations contained in the complaint are true") (citing *Malcolm v. Honeoye Falls Lima Cent. Sch. Dist.*, 517 F. App'x 11, 12 (2d Cir. 2013) (summary order)).

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

at ECF 64–65.)  "After an hour of probative actions[,] . . . all six of the individuals left [Plaintiff's] apartment."  (*Id.* at ECF 65.)

Two days later, on May 4, 2018, ACS workers Antoine and Caban, along with several other police officers, including Officer Roke and an unnamed female officer, returned to Plaintiff's apartment to remove her children pursuant to a Family Court petition that had been filed the previous day.  (*Id.*; *see also id.* at ECF 87–95 (Family Court petition and removal order dated May 3, 2018).)  While Plaintiff was attempting to keep her children at home, Officer Roke "grabbed [Plaintiff] and put handcuffs (shackles) on [her] and he did not put on the safety locks."  (Am. Compl., Dkt. 7, ECF 66.)  After arriving at the 77th Precinct, a "female officer grabbed [Plaintiff] and forcefully pulled [her] backwards which made the handcuffs tighter [and] immediately a sharp excruciat[ing] pain shot up [Plaintiff's] right arm and [Plaintiff] almost lost [her] balance."  (*Id.*) The handcuffs remained on for 11 hours and were only removed for 30 minutes so that Plaintiff could be fingerprinted.  (*Id.*)  The handcuffs were then intermittently put on and taken off over the next 17 hours.  (*Id.*)  The charges on which she was arrested for this incident were dismissed at trial.  (*Id.*)

On May 22, 2018, Plaintiff was again arrested without a warrant, this time by Officer Mancilla and an unnamed black officer, who stated that they did not need a warrant because Plaintiff was "guilty."  (*Id.* at ECF 68.)  At trial, Judge Abena Darkeh "ignored the inconsistencies in Nosson Schwarcz['s] testimony against that of the officer Mancilla #23627" and convicted Plaintiff.  (*Id.* at ECF 68–69.)  Plaintiff is appealing that conviction.  (*Id.* at ECF 69.)

On October 9, 2018, Plaintiff was at the Kings County Civil Court to file an Ejectment[5] for one of the properties owned by her great-grandfather. (*Id.* at ECF 69.) Plaintiff "faced opposition" in filing her paperwork, so she began recording the process on her cellphone. (*Id.*) After she began recording, Sergeant Shea and Court Officer #6768 came over to Plaintiff and asked to see her videos and photos, which Plaintiff refused to show them. (*Id.*) Plaintiff attempted to leave, but Sergeant Shea and Court Officer #6768 blocked her. (*Id.*) Then, Sergeant Shea "[g]rabbed [Plaintiff's] right arm, [Plaintiff] pulled away and told [him] [']don't touch me[']." (*Id.*) Plaintiff "attempted to leave and [then] was attacked by 7–9 male court officers and thrown to the ground." (*Id.*) To Plaintiff, "[i]t felt as if they were trying to break [her] arm[;] they placed hand cuffs on [Plaintiff's] already injured wrist tightly and [she] was immediately in pain." (*Id.*) Plaintiff was then arrested without a warrant, taken to the hospital, and kept in handcuffs for over 26 hours total. (*Id.*) The charges from this arrest were adjourned in contemplation of dismissal. (*Id.*)

Plaintiff timely filed her amended complaint on May 17, 2019 along with a Temporary Restraining Order ("TRO") Motion. (Dkt. 7.) The Court summarily dismissed the TRO motion the same day. (Dkt. 8.) Plaintiff seeks various forms of injunctive relief as well as punitive damages. (Am. Compl., Dkt. 7, at ECF 71–72.)

## LEGAL STANDARD

Pursuant to the *in forma pauperis* statute, this Court must dismiss a case if the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief

---

[5] "Under New York law, a claim for ejectment requires that the plaintiffs plead that they 'are out of possession; the defendants are in possession, allegedly wrongfully; and that the plaintiffs claim damages because of the allegedly wrongful possession.'" *Kimso Apartments LLC v. Dish Network Servs. LLC*, No. 16-CV-06834 (AMD) (RLM), 2017 WL 8780452, at *5 (E.D.N.Y. Dec. 20, 2017) (brackets omitted) (quoting *Cayuga Indian Nation of N.Y. v. Pataki*, 413 F.3d 266, 285 (2d Cir. 2005) (Hall, J., concurring), and citing *Merkos L'Inyonei Chinuch, Inc. v. Sharf*, 59 A.D.3d 408, 410 (2d Dep't 2009)).

may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will be considered plausible on its face "when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Similarly, a complaint is insufficient to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

At the same time, "document[s] filed *pro se* [are] to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citations omitted). "Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law." *McCrary v. Cty. of Nassau*, 493 F. Supp. 2d 581, 584 (E.D.N.Y. 2007) (citing *Faretta v. California,* 422 U.S. 806, 834 n.36 (1975)). "[A] plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555 (2007) (quotations, brackets, and citation omitted).

**DISCUSSION**

In order to maintain a § 1983 action, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted); *see also Flynn v. James*, 513 F. App'x 37, 39 (2d Cir. 2013) (summary order). Second, "the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell*, 13 F.3d at 547. Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).

**I.     Claims against Unmentioned Defendants**

"[I]n order to state a claim for relief under Section 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation." *Lawrence*, 2013 WL 3364344, at *3 (citing *Farid v. Elle*, 593 F.3d 233, 249 (2d Cir. 2010)). Plaintiff names a total of 157 Defendants in her amended complaint. Of those 157 Defendants, 115 are not mentioned at all in Plaintiff's allegations.[6] Therefore, Plaintiff's claims

---

[6] The Defendants not mentioned in Plaintiff's allegations are: Joe Morgano, Esq., Amanda G. Katz, Esq., Alan Sputz, Esq., Andrew Lee, Esq., Timothy Marsh, Esq., Stephen Schwarcz, Esq., Eric Gonzalez, Esq., Meena Seralathan, Esq., Rebecca Mitchell, Alicia Frisch #23972, Sgt. Sandrina Osborne (77th Command), Lieutenant Peter Sotirioui (77th Command), Alyson Thompson, Anchilles Perry, Michael Parlamis, Michael Korogluyev, Sandy Korogluyev, Paula Benjamin-Howard, John Buttacavoli, Steven Banks, Richard A. Carranza, Lazaro Valdez, Tracy Kitt, Lind Ford;, Jennifer Goldstein, Andrew Cuomo, Shelia J. Poole, Heather Anwer, Miriam Vasquez, Yessena Figeroa, Tiffany Hicks, Cheryl Bender, Cheryl Place, L. Vega, K. Mack, Renee Pinkney, Landai Barnes, Alakeem Adekoya, Barbara Famosa, Kolawole Kareem, Direen Patterson, Savannah Lily, Princess Palmer, Robert Ezrapour, Ken Haron, Joseph Soleimani, Ben Soleimani, Jason Haitkin, Hopelee Hobson, Frances Carr, Keta. Saunders, Carol Joidan, Jack Bowden, Dennis Burton, Andrea Darell, Petra Legette, Leatha Jennings, Dominique Manfreda, Felix Padilla, Melanie Alves, Florence Berman, Susan Persaud, Robin Alexander, Annette Davilla,

against these 115 Defendants are dismissed for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Claims against Mentioned Defendants

### A. Claims against High-Ranking City and State Officials

Plaintiff mentions several high-ranking city and state officials within her allegations but only to note that she asked for their assistance in resolving the issues that Plaintiff now seeks relief for in the instant action. (*See, e.g.*, Am. Compl., Dkt. 7, at ECF 67 ("[Plaintiff] requested a meeting with Bill De Blasio, [t]he New York State Attorney General's office who was Barbara Underwood, [t]he Brooklyn Borough president['s] office Eric L. Adams, [t]he office of the Public Advocate who was Letitia James ([s]he is now the [A]ttorney General), [the] Administration for [C]hildren's [S]ervices Commissioner David A. Hansell['s] office . . . .").) Because Defendants must be personally involved in the specific alleged constitutional deprivations, *see Gray-Davis v. Rigby*, No. 14-CV-1490, 2016 WL 1298131, at *5 (N.D.N.Y. Mar. 31, 2016) ("A defendant is 'personally involved' if he 'directly participated in the [allegedly unconstitutional] infraction.'") (quoting *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)), and Plaintiff's amended complaint fails to allege any such involvement by these city and state officials, the Court dismisses Plaintiff's claims against Defendants Bill De Blasio, Letitia James, Eric L. Adams, David A. Hansell, William

---

Shakeiska Jackson, Anternet Brown, Shavonda Jones, Gina Sarubbi, Luis Vanucci, Shaunda Johnson, Kalila Nelson, Michelle De La Cruz, Caniece Benoit, Athena Bass, Jacqueline Payne, Lynette Lipsey-Hughes, Holly Chambers, Sodelyn Joseph, Haddie Brathwaite, Jack Bowden, Vilma Bowden, Tolani Epemolu, Taiesha Colemen, Peguy Pierrot, Louis Dobbs-Rose, Sharice Scott, Sonia Ricketts-Hubba, Clarissa Sealy, Chevelle Robinson, Deputy Director Vargas, Cps Anwana, Cps Emmanuel, Teresa Johnson-Hale, Jacqueline Coleman, Marianne Whitfield, Linden Britton, Lieutenant Chang (77th Command), Marcia Johnson, Angelberth Ezeogu. Dacia Carter, Tiffany Gentle, Kalelilia Hamilton, Shaniqua Brown, Allen Wayne, Mr. Lacewell, Maritza Valez Luyando, M. Kleidman, Ms. Brianna, Andrew Gallishaw-King, Zachary W. Carter, A. Babb, Cynthia Robinson, Rose McCrea, Dan Haron, Ms. Brianna, Andrew Gallishaw-King.

Harrington, Kelli Muse, Zara Sheikh, Scott Stringer, Jacques Jihad, and Eric Enderlin.[7] 28 U.S.C.
§ 1915(e)(2)(B)(ii).

## B.      Claims against HRA Employees

In construing Plaintiff's complaint liberally, the Court considers whether Plaintiff's
allegations regarding her Supplemental Nutrition Assistant Program benefits constitute a due
process claim.  Plaintiff alleges that Defendant Caseworker Iris Sanchez was negligent in sending
a referral to a different department within the New York City Human Resources Administration
Job Center.  (Am. Compl., Dkt. 7, ECF 62–63.)  Though Plaintiff has a "property interest in the
government entitlements that she receives, which is protected by procedural due process," *Banks
v. Human Res. Admin.*, No. 11-CV-2380 (JG), 2013 WL 142374, at *2 (E.D.N.Y. Jan. 11, 2013)
(citing *Goldberg v. Kelly*, 397 U.S. 254, 261–62 (1970)), Plaintiff has not raised any allegations
that she was denied the procedural due process that New York usually provides to people who
have had their benefits denied and that satisfies due process requirements.  *See, e.g.*, *Vapne v.
Eggleston*, No. 04-CV-565 (NRB), 2004 WL 2754673, at *5 (S.D.N.Y. Dec. 1, 2004) (noting that
"Article 78 is routinely the venue in which adverse food stamps determinations are challenged,

---

[7] Alternatively, given that these Defendants are all high-ranking state officials with policy-making powers also named in their official capacities, the Court considers whether Plaintiff alleges claims against New York City or New York State. *See Kentucky* v. *Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  However, even liberally construing Plaintiff's amended complaint, she does not allege any city or state practice or policy that caused the alleged deprivation of her rights, as would be required for a lawsuit against either municipality. *Hartline v. Gallo*, 546 F.3d 95, 103 (2d Cir. 2008) ("[A] plaintiff must demonstrate both an injury to a constitutionally protected right and that the injury was caused by a policy or custom of the municipality or by a municipal official responsible for establishing final policy" to bring a municipal liability claim under § 1983) (internal quotation marks and citation omitted).  Therefore, all municipal liability claims against the named city and state Defendant officials, in their official capacities, are also dismissed.

often successfully"). Accordingly, Plaintiff has failed to state a claim against Defendants Iris Sanchez and Jane Doe #1, a Human Resources Administration Manager, and they are dismissed as Defendants. 28 U.S.C. § 1915(e)(2)(B)(ii).

### C. Claims against Defendant Judges and Attorneys

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991), and *Forrester v. White*, 484 U.S. 219, 225–26 (1988)). Plaintiff, at various times throughout her amended complaint, describes the actions of state court judges. (*See, e.g.*, Am. Compl., Dkt. 7, at ECF 67 (describing various family court proceedings before Judges Williams and Barnett); *see also id.* at ECF 68–69 (describing a criminal court proceeding before Judge Darkeh).) However, the actions of these state court judges were performed within their capacities as judicial officials. Furthermore, the absolute judicial immunity of the court and its members "is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action [she] took was in error . . . or was in excess of [her] authority." *Mireles*, 502 U.S. at 11, 13 (quotations and citations omitted). Therefore, Plaintiff's claims against all judicial Defendants named in the amended complaint fail.

This judicial immunity can also extend to "persons other than a judge 'who perform functions closely associated with the judicial process.'" *McKnight v. Middleton*, 699 F. Supp. 2d 507, 525 (E.D.N.Y. 2010) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). Plaintiff briefly mentions a Kings County Civil Court clerk, Alia Razzaq, but only in the context that other named Defendants filed a "holdover proceeding" with that clerk. (Am. Compl., Dkt. 7, at ECF 70.) Plaintiff's allegations suggest that this clerk was performing a task that was "judicial in nature and an integral part of the judicial process," *i.e.*, accepting a legal filing. *McKnight*, 699 F. Supp.

2d at 525 (quoting *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997)). Therefore, absolute judicial immunity shields Defendant Razzaq from liability as well.

Finally, claims against attorneys who represent New York City in criminal or civil proceedings are also entitled to absolute immunity. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006) ("As a general principle, a government attorney is entitled to absolute immunity when functioning as an advocate of the state in a way that is intimately associated with the judicial process."); *O'Callaghan v. City of New York*, No. 16-CV-1139 (ER), 2016 WL 7177509, at *11 (S.D.N.Y. Dec. 8, 2016) (holding that an Assistant Corporation Counsel defendant was entitled to absolute immunity for defending the City of New York in a state civil action). Plaintiff's allegations against Defendant Flaherty all relate to the acts of a city attorney acting within the scope of her job representing the City of New York in a family court proceeding, making her immune from suit.

Accordingly and in sum, Plaintiff's claims against Defendants Jacqueline D. Williams, Elizabeth Barnett, Abena Darkeh, Deanna Flaherty, Esq., and Alia Razzaq are dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### D.     Private Landlord Defendants

Plaintiff notes numerous times that various employees of the management company that manages her building were harassing her. (*See, e.g.*, Am. Compl., Dkt. 7, at ECF 63 ("Several employees from All Year Management then proceeded to harass and degrade [Plaintiff] and [Plaintiff's] children.").) Plaintiff also includes the attorney and law firm that represent these Defendants in these harassment allegations. (*See id.* at ECF 69.) A claim for relief under § 1983 must allege facts showing that the defendant acted under color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Plaintiff does not allege any facts to support the

inference that any of these management company employees or their attorneys are state actors or were acting under color of state law. Therefore, these Defendants are beyond the reach of any claims Plaintiff brings under § 1983. *See Quow v. Wallach*, No. 16-CV-3947 (AMD), 2016 WL 4099107, at *2 (E.D.N.Y. Aug. 2, 2016) (dismissing a § 1983 claim because "the plaintiff has not alleged that the defendant is a state actor or is acting under color of state law" and "[a]ccordingly, the plaintiff cannot state a Section 1983 claim against this private landlord").

However, as private landlords, Defendants Joseph and Nosson Schwarcz, Rivera, Friedman, and Goldman could still be subject to claims under the Fair Housing Act ("FHA"). *Id.* In construing this *pro se* complaint liberally, the Court therefore considers whether Plaintiff states a claim under this Act. The FHA forbids discrimination "against any person in the terms, conditions, or privileges of . . . rental of dwelling, or in the provisions of services or facilities in connection therewith, because of . . . religion . . . ." 42 U.S.C. § 3604(b). Though Plaintiff alleges numerous instances of certain Defendants' harassing behavior (*see e.g.*, Am. Compl., Dkt. 7, at ECF 62, 63, 67, 68–69), Plaintiff only refers, in conclusory fashion, to one alleged instance of harassment by her building manager as being "religious discrimination." (*See* Am. Compl., Dkt. 7, at ECF 61–62 (stating that a building manager's demand that Plaintiff bring her shoes inside her apartment, which Plaintiff claimed violated her religion, was religious discrimination).) Conclusory allegations of this kind cannot support a discrimination claim. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level.") (quotations, brackets, and citation omitted).

Likewise, Plaintiff's allegations do not support a claim of retaliation, which the FHA also prohibits. *See* 42 U.S.C. § 3617 (prohibiting retaliation against people who engage in a "protected

activity" under the FHA). Plaintiff notes that she told Defendant Rivera that the management company was "committing fraud and that [Plaintiff was] going to report this" and that Plaintiff proceeded to call the FBI. (Am. Compl., Dkt. 7, at ECF 63.) However, reporting alleged criminal conduct is not an activity that the FHA is designed to protect. *See Miller v. Bd. of Managers of Whispering Pines at Colonial Woods Condo. II*, 457 F. Supp. 2d 126, 131 (E.D.N.Y. 2006) ("Protected activity under the FHA refers to 'action taken to protest or oppose statutorily prohibited discrimination.'") (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)).

Accordingly and in sum, because Plaintiff's allegations do not support claims under § 1983 or the FHA, all claims against Defendants Joseph and Nosson Schwarcz, Enrique Rivera, David Friedman, Yoel Goldman, Jeffrey Stern, and Gutman, Mintz, Baker & Sonnetfeldt, LLP are dismissed for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

### E. Claims against Defendant ACS Workers

Plaintiff's amended complaint shows that she has been the subject parent of two separate Family Court cases alleging neglect, one in May 2018 (Am. Compl., Dkt. 7, at ECF 87–95) and one in January 2019 (*id.* at ECF 105–10). Plaintiff alleges that in connection with these cases, various ACS workers have illegally entered her apartment and unlawfully removed her children from her care.

#### 1. Claims Related to the May 2, 2018 incident

Plaintiff alleges that on May 2, 2018, Defendants Antoine and Caban entered Plaintiff's home without her consent and without a warrant. (Am. Compl., Dkt. 7, at ECF 64–65.) Plaintiff asserts that while Defendant Antoine attempted to get an order pursuant to FCA § 1034, no such order was signed by a judge, and that Defendants Antoine and Caban therefore entered Plaintiff's

home illegally (with the assistance of several NYPD officers, as described *infra*).  (*Id.* at ECF 64.)  The Court finds that these allegations, accepted as true at this stage, are sufficient to state a claim of unlawful entry in violation of the Fourth Amendment.[8]  *See Wilson v. Sessoms-Newton*, No. 14-CV-106 (PKC), 2017 WL 3575240, at *5 (E.D.N.Y. Aug. 17, 2017) ("Absent exigent circumstances or some other exception, State actors must obtain a warrant before they enter the home to conduct a search or otherwise intrude on an individual's legitimate expectation of privacy.") (internal brackets omitted) (quoting *United States v. Gori*, 230 F.3d 44, 50 (2d Cir. 2000)).

Plaintiff also appears to allege a substantive due process claim against Defendants Antoine, Caban, and Marcel (an ACS Supervisor that worked with Defendant Antoine) based on their filing of an allegedly false petition and supporting documents in Family Court to support the removal of Plaintiff's children.  (Am. Compl., Dkt. 7, ECF 66); *see also Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012) ("[W]hile a procedural due process claim challenges the procedure by which a removal is effected, a substantive due process claim challenges the fact of [the] removal itself.") (internal quotations and citation omitted).  Parents "have a constitutionally protected liberty interest in the care, custody and management of their children, and family members have a fundamental right under the Fourteenth Amendment to remain together." *Shapiro v. Kronfeld*, No.

---

[8] Though the Court, as required, assumes the truth of Plaintiff's allegations, the Court will give Defendants thirty (30) days to produce the warrant that Plaintiff alleges was not signed. If Defendants are able to produce the warrant, and there are no disputes as to the authenticity or accuracy of the document, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("[E]ven if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.") (internal quotations and citation omitted), the Court will take judicial notice of the warrant, construe it as part of Plaintiff's complaint, and make any further rulings about the viability of Plaintiff's claim, as appropriate. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

00-CV-6286 (RWS), 2004 WL 2698889, at *12 (S.D.N.Y. Nov. 24, 2004) (internal quotations and citation omitted). However, "a parent's substantive constitutional rights are not infringed if a caseworker, in effecting a removal of a child from the parent's home, has a reasonable basis for thinking that a child is abused or neglected." *Southerland*, 680 F.3d at 152.

Though Plaintiff asserts that the Family Court allegations against her were false, the exhibits she attaches to her complaint show that Defendant Antoine relied on several sources of information to support her petition and the request for removal.[9] (*See* Am. Compl., Dkt. 7, at ECF 91–92 (noting information about Plaintiff's children's well-being from the building superintendent, maternal uncle, and building manager, as well as case records showing that Plaintiff had five previously "indicated" cases and had self-reported a diagnosis of bipolar disease for which she was not receiving any mental health treatment).) Therefore, even though these allegations were eventually found insufficient to support continued removal of the children (*id.* at ECF 97–98 (Family Court order returning Plaintiff's children to her, subject to Plaintiff's compliance with 11 terms and conditions)) or not enough for a finding of neglect against Plaintiff (*id.* at ECF 111–15 (finding that ACS had not presented a *prime facie* case of neglect against Plaintiff)), the amended complaint demonstrates that the information on which Defendant Antoine relied provided a "reasonable basis" for her decision to seek removal of the children. *See Black v. Ranley*, No. 17-CV-9026 (KPF), 2018 WL 2766138, at *8 (S.D.N.Y. June 8, 2018) (noting that "[u]nderpinning the reasonable basis standard is the need for unusual deference to those who

---

[9] The Court notes that in making a *sua sponte* determination of dismissal, "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Deronette v. City of New York*, No. 05-CV-5275 (SJ), 2007 WL 951925, at *2 (E.D.N.Y. Mar. 27, 2007) (quoting *In Re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001)).

investigate allegations of child abuse or neglect") (internal quotations and citations omitted).

Therefore, any substantive due process claims against Defendants Antoine, Caban, and Marcel are dismissed. As this is the only claim alleged against Defendant Helene Marcel, she is dismissed from this action. 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2. Claims Related to the April 16, 2019[10] incident

Plaintiff appears to make an unlawful entry claim against Defendant ACS Worker Fakira based on her role in entering Plaintiff's house and removing Plaintiff's children on April 16, 2019. (*See* Am. Compl., Dkt. 7, at ECF 70.) However, unlike the May 2018 incident, described more fully *supra*, Plaintiff's attached exhibits make it clear that Defendant Fakira was acting pursuant to an April 16, 2019 Family Court Order ("Remand Order") remanding Plaintiff's children to the care of ACS. (*Id.* at ECF 173 (Order stating that "ACS shall enter the home to retrieve the subject children with police assistance, to have the children be placed in ACS custody, with any force deemed necessary"); *see also id.* at ECF 132 (decision of Family Court judge noting that Family Court issued an order removing the children and an arrest warrant for Plaintiff on April 16, 2019).) Plaintiff has not challenged the validity of this Order. Therefore, this Order establishes that Defendant Fakira lawfully entered Plaintiff's home on April 16, 2019. *See Nicholson v. Scoppetta*, 344 F.3d 154, 176 (2d Cir. 2003) ("We have said previously that a Family Court order is probably

---

[10] Though Plaintiff begins the description of this incident with the date "April 1th, 2019," the Court infers that this is a typographical error, given that Plaintiff's allegations appear to describe only one incident occurring while Plaintiff and her family were celebrating her son's and aunt's birthdays, which are both on April 17. (*See* Am. Compl., Dkt. 7, ECF 70.) Therefore, the Court assumes that all of the events relating to Plaintiff's claims against ACS Worker Fakira occurred on April 16, 2019, a date that Plaintiff refers to in her allegations.

the equivalent of a warrant for Fourth Amendment purposes.").[11]  Accordingly, all claims against Defendant Shebana Fakira are dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### F.  Claims against Defendant Police Officers

Once again liberally construing Plaintiff's complaint, she appears to allege various unlawful entry, excessive force, and false arrest, claims against numerous NYPD officers.

#### 1.  Claims Related to the April 26, 2018 Incident

Plaintiff briefly describes an encounter with Defendant NYPD Officer Giglilio and another female officer from the 77th precinct.  (Am. Compl., Dkt. 7, ECF 64.)  However, given that Plaintiff's own allegations show that Defendant Giglilio left after Plaintiff refused to let them enter, she has failed to state a claim against this Defendant.  Accordingly, all claims against Defendant Michelle Giglilio are dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

#### 2.  Claims Related to the May 2, 2018 Incident

Plaintiff alleges that Defendant NYPD Officers Quintero, Toddman, Gellineau, and Epstein entered her apartment without a warrant on May 2, 2018.  (Am. Compl., Dkt. 7, ECF 64–65.)  Specifically, she alleges that two officers used the fire escape to enter her apartment through a kitchen window when she refused to open the front door, and that the two officers then allowed the remaining officers and ACS workers into her apartment.  (*Id.*)  As described *supra*, Plaintiff

---

[11] Even if it is not definitively established in this Circuit that a Family Court order is the equivalent of a warrant for Fourth Amendment purposes, Defendant Fakira is entitled to qualified immunity for relying on the Family Court order in entering Plaintiff's apartment. *See Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010) ("[Q]ualified immunity . . . shield[s] executive employees [like ACS workers] from civil liability under § 1983 if either (1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that their acts did not violate these clearly established rights.") (internal quotations, brackets, and citation omitted).

alleges that while Defendant Antoine had attempted to obtain an FCA § 1034 entry order, no such document was signed before these Defendant Officers entered Plaintiff's apartment. (*Id.*)

The Court finds that Plaintiff has sufficiently stated a claim of unlawful entry against Defendants Quintero, Toddman, Gellineau, and Epstein. *See Wilson*, 2017 WL 3575240, at *5. Therefore, an unlawful entry claim will proceed against Defendants Quintero, Toddman, Gellineau, and Epstein.

### 3.   Claims Related to the May 4, 2018 Incident

Plaintiff also claims that on May 4, 2018, while ACS workers were removing Plaintiff's children, Defendant NYPD Officer Roke, along with an unnamed female officer, arrested Plaintiff without a warrant and used excessive force when handcuffing Plaintiff. (Am. Compl., Dkt. 7, at ECF 66; *see also id.* at ECF 71 (noting that Plaintiff has "nerve damage in [her] hands but it is wors[e] in [her] left hand as [her] thumb has been numb for about a month").) The Court finds that these allegations sufficiently state claims of false arrest and excessive force. *See Concepcion v. City of New York*, No. 15-CV-4844 (AMD) (LB), 2019 WL 1994485, at *4 (E.D.N.Y. May 6, 2019) ("In order to state a [false arrest] § 1983 claim, [Plaintiff] must establish that the defendants deprived [Plaintiff] of [her] Fourth Amendment rights by intentionally confining [her] without [her] consent and without justification." (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) and *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)); *id.* at *6 ("The Fourth Amendment prohibits the use of unreasonable and excessive force during an arrest."); *see also Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 377 (S.D.N.Y. 2015) ("In evaluating [excessive force claims arising out of the use of handcuffs], a court must consider (1) whether the handcuffs were unreasonably tight, (2) [whether] the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists.") (internal quotations and

citations omitted); *see also id.* ("[T]here is a consensus in the case law that tight handcuffing does not constitute excessive force unless it causes injuries beyond pain and bruising."). Therefore, these claims will proceed against Defendant Roke.

### 4.  Claims Related to the May 22, 2018 Incident

Plaintiff alleges that on May 22, 2018, after returning from the hospital, Defendant NYPD Officer Mancilla and an unnamed black officer arrested Plaintiff without a warrant, stating that they did not need a warrant because Plaintiff "was guilty." (Am. Compl., Dkt. 7, at ECF 68.)  The Court finds that Plaintiff has sufficiently alleged claims of false arrest against Defendant Michael Mancilla.  *See Concepcion*, 2019 WL 1994485, at *4.  Therefore, this claim will proceed.

### 5.  Claims Related to the October 9, 2018 Incident

Additionally, Plaintiff asserts that on October 9, 2018, while attempting to file papers in Kings County Civil Court, she was questioned by Defendants NYPD Sergeant Shea and Court Officer #6768 about her efforts to record her interactions with court staff.  (Am. Compl., Dkt. 7, at ECF 69.)  When Plaintiff asserted that "the [F]ourth [A]mendment protects against unlawful searches" and refused to give Defendants Shea and Court Officer #6768 her cellphones, as requested, Shea "[g]rabbed [her] right arm" and then Plaintiff "was attacked by 7–9 male court officers and thrown to the ground." (*Id.*)  According to Plaintiff, "[i]t felt as if they were trying to break [her] arm[.]"  The officers then "placed handcuffs on [Plaintiff's] already injured wrist tightly and [she] was immediately in pain [and] [her] left arm went numb." (*Id.*)  Plaintiff was arrested, taken to a hospital, and then to Central Booking, where the case was adjourned in contemplation of dismissal.  (*Id.*)

The Court finds that Plaintiff has sufficiently pleaded claims of excessive force and false arrest. *See Concepcion*, 2019 WL 1994485, at *4; *id.* at *6; *see also Higginbotham*, 105 F. Supp. 3d at 377. Therefore, these claims will proceed against Defendants Shea and Court Officer #6768.

6.    <u>Claims Related to the April 16, 2019 Incident</u>

Finally, liberally construing Plaintiff's complaint, the Court finds that Plaintiff alleges unlawful entry and false arrest claims against Defendant NYPD Officers Behal, Fitzgerald, Santos, Feraca, and Russel based on the April 16, 2019 incident, discussed *supra*. Plaintiff claims that these Defendant Officers forced Plaintiff to open the door to her apartment, after threatening to break the door down, and then arrested her. (Am. Compl., Dkt. 7, at ECF 70.) Assuming, *arguendo*, that Plaintiff opening the door does not defeat her unlawful entry claim, these Defendant Officers, at a minimum, lawfully entered Plaintiff's home pursuant to a Family Court Remand Order and Arrest Warrant that had been issued earlier that day by Judge Gruebel. (*Id.* at ECF 173 (showing a copy of the Remand Order stating that "ACS shall enter the home to retrieve the subject children with police assistance, to have the children be placed in ACS custody, with any force deemed necessary" and "[t]he [Family] Court issues a warrant for the [Plaintiff]"); *see also id.* at ECF 132 (decision of Family Court judge noting that Family Court issued an order removing the children and an arrest warrant for Plaintiff on April 16, 2019)); *see Nicholson*, 344 F.3d at 176 ("We have said previously that a Family Court order is probably the equivalent of a warrant for Fourth Amendment purposes."). The Arrest Warrant also provided a legal basis for the Defendant Officers to arrest Plaintiff. *See Cogswell v. Cty. of Suffolk Deputy Sheriff's Dep't*, 375 F. Supp. 2d 182, 187 (E.D.N.Y. 2005) (holding that an arrest made pursuant to a family court arrest warrant defeated a false arrest claim).

Therefore, because the Remand Order and Arrest Warrant establish that the Defendant Officers had both lawfully entered Plaintiff's home and arrested her on April 16, 2019, the Court dismisses all claims against Defendants Behal, Fitzgerald, Santos, Feraca, and Russel. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## CONCLUSION

For the reasons stated herein, the following claims will proceed:

1. An unlawful entry claim against Defendants Antoine, Caban, Quintero, Toddman, Gellineau, and Epstein based on the events of May 2, 2018;

2. Excessive force and false arrest claims against Defendant Roke based on the events of May 4, 2018;

3. A false arrest claim against Defendant Mancilla based on the events of May 22, 2018; and

4. Excessive force and false arrest claims against Defendants Shea and Court Officer #6768 based on the events of October 9, 2018.[12]

All remaining claims against all remaining Defendants are dismissed. No summons will issue against these Defendants, and they are terminated from this action.

As to Defendants Antoine, Caban, Quintero, Toddman, Gellineau, Epstein, Roke, Mancilla, and Shea, the Clerk of Court is respectfully directed to issue a summons against each Defendant and the United States Marshals Service is directed to serve the complaint and this Order

---

[12] The Court construes all claims as being made under both federal law, pursuant to the Fourth and Fourteenth Amendments, as well as 42 U.S.C. § 1983, and their state law corollaries. *See Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law."); *Graham v. City of New York*, 928 F. Supp. 2d 610, 624 (E.D.N.Y. 2013) ("Federal excessive force claims and state law assault and battery claims against police officers are nearly identical.") (citing *Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009) (summary order); *cf. Frederique v. Cty. of Nassau*, 168 F. Supp. 3d 455, 489 (E.D.N.Y. 2016) (noting that while a state law claim for trespass only requires a plaintiff to establish "an intrusion upon the property of another without permission," a trespass claim against a police officer will not succeed when "a law officer enters onto Plaintiff's property to carry out his official duties") (internal quotations and citations omitted).

on these Defendants without prepayment of fees.  As to Defendant Court Officer #6768, pursuant to the holding in *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (*per curiam*), the Court requests that the Corporation Counsel of the City of New York ascertain the full name and service address of this officer.  Corporation Counsel need not undertake to defend or indemnify this individual officer merely because of the issuance of the Order.  This Order provides a means by which Plaintiff may name and properly serve this John Doe Defendant.  Finally, as noted *supra*, Defendants Antoine, Caban, Quintero, Toddman, Gellineau, and Epstein have thirty (30) days from the date of this Order to produce the warrant that Plaintiff alleges was not signed prior to the alleged unlawful entry on May 2, 2018.

The Clerk of Court is respectfully requested to mail a copy of this Order along with the complaint to the Corporation Counsel for the City of New York, Special Federal Litigation Division.  The case is referred to the Honorable Ramon E. Reyes, Jr., United States Magistrate Judge, for pretrial supervision.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore, *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 15, 2019
       Brooklyn, New York