```
1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2
     ------------------------------x
3                                        19-CV-1877(PKC)
     EMPRESS BEY,
4                                        United States Courthouse
             Plaintiff,                  Brooklyn, New York
5
             – versus –                  December 10, 2019
6                                        2:00 p.m.
     ANTOINE, et al,
7
             Defendants.
8
     ------------------------------x
9
                 TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
10                  BEFORE THE HONORABLE PAMELA K. CHEN
                       UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES

13   Pro Se Plaintiff:          EMPRESS BEY
                                 1191 Park Place
14                               Brooklyn, New York 11213

15   Attorney for Defendant:  CITY OF NEW YORK LAW DEPARTMENT
                                 100 Church Street
16                               New York, New York 10007
                                 BY:  MARIA DECASTRO, ESQ.
17                                    AMANDA ROLON, ESQ.

18

19
     Court Reporter:           RIVKA TEICH CSR, RPR, RMR, FCRR
20                               Phone:  718-613-2268
                                 Email:  RivkaTeich@gmail.com
21
     Proceedings recorded by mechanical stenography.  Transcript
22   produced by computer-aided transcription.

23

24

25
```

PROCEEDINGS

1          (In open court.)

2          THE COURTROOM DEPUTY:  Civil cause for oral

3  argument, docket 19-CV-1877, Bey V. Antoine, et al.

4          State your appearances.

5          MS. BEY:  I'm Empress Bey, the claimant.

6          THE COURT:  Good afternoon.  You can have a seat.

7          MS. DeCASTRO:  Good afternoon, your Honor, Maria

8  DeCastro, Corporation Counsel.  And with me is Amanda Rolon,

9  she passed the bar but is not admitted.  She would like to

10 conduct the conference if your Honor would allow.

11         THE COURT:  That's fine.

12         Ms. Bey, can we have maybe your --

13         MS. BEY:  I would have my older son take her outside

14 of the courtroom.  She won't be quiet.  I need to be able to

15 hear.

16         THE COURT:  Go ahead and do that.

17         MS. DeCASTRO:  Your Honor, if I could be heard on

18 this issue.  If all her children can be step out because they

19 could be witnesses.

20         THE COURT:  Are you okay with having all four

21 children of your children step outside?

22         MS. BEY:  No problem, your Honor.

23         THE COURT:  How old is your oldest?

24         MS. BEY:  Thirteen.

25         THE COURT:  All right, so go ahead.

PROCEEDINGS

1          We're here on the request of the defense to dismiss

2     one of your claims, Ms. Bey.  Let me recount for everyone

3     briefly the history in this matter.

4          The plaintiff has brought a number of Section 1983

5     claims against several NYPD officers and ACS workers.

6     Previously I had sua sponte, meaning on my own, dismissed most

7     of the defendants from the amended complaint.  That happened

8     back on July 15, 2019.  However, I did allow six claims

9     against ten defendants to proceed.

10         As relevant here, I allowed amongst others, a claim

11    of unlawful entry to go forward against six of the defendants.

12    And that relates to an incident that occurred on May 2, 2018.

13    However, as the parties may recall in my decision, I did note

14    in a footnote that because the issue here was whether or not

15    there was a validly signed or issued warrant that permitted

16    the defendants to enter Ms. Bey's home, I indicated that if

17    the defendants located that warrant they could reapply for

18    dismissal, remove for dismissal of that claim relating to the

19    May 2, 2018 unlawful entry.  So that's what brings us here

20    today.

21         The defendant has located a warrant relating to that

22    entry; namely, the one on May 2, 2018.  It appears to be

23    signed by a Justice of the Supreme Court of New York.

24         MS. BEY:  Family Court, your Honor.

25         THE COURT:  Family Court, my apologies.  And that

PROCEEDINGS

1   Judge is Jacqueline D. Williams and was apparently issued on

2   April 13, 2018, but apparently executed on May 2, 2018.  And

3   specifically and amongst other things, it says that agents for

4   the Administration for Children Services --

5           MS. BEY:  It's an order to produce, your Honor, this

6   is not a warrant.

7           THE COURT:  It does say, ma'am, that they are

8   authorized to enter the above premise to determine if the

9   children are present and to access the home and to proceed

10  thereafter with a child protective investigation.

11          MS. BEY:  This --

12          THE COURT:  And it extends not only to ACS workers

13  but persons conducting a child protective investigation

14  accompanied by police.  So I guess the person conducting a

15  child protective investigation, I presume modifies the staff

16  of ACS, but they can be accompanied by police.  And we do have

17  police officers who are named as defendants in this case, and

18  were I believe involved in that May 2, 2018 entry into

19  Ms. Bey's home.

20          Now Ms. Bey, you've produce in response the first

21  page of what appears to be the same exact warrant.  And you

22  indicate I believe in handwritten notes that this was the

23  document dropped on your floor or the floor of your living

24  room on May 2.

25          MS. BEY:  Right.

Rivka Teich CSR, RPR, RMR, FCRR
Official Court Reporter

PROCEEDINGS

1          THE COURT:  You don't, however, include the second

2     page which is part of the defendant's exhibit.  It shows the

3     signature, which is the issue in dispute here.

4          MS. BEY:  The document that I have here is

5     two-sided.  I'm assuming when I made the copy I didn't make it

6     two-sided, which is the reason it didn't show.

7          THE COURT:  Hang on.  So your copy is signed as

8     well, correct?

9          MS. BEY:  Right.

10          THE COURT:  By the judge.

11          MS. BEY:  Yes.

12          THE COURT:  Tell me why it is that that doesn't

13     basically eliminate your claim or provide a basis for

14     dismissing your claim where you say the officers and ACS

15     entered your house unlawfully?

16          MS. BEY:  Your Honor, I also presided first of all

17     in Family Court and that day produced this document

18     understates that in section, in part, F it states they have to

19     have a search warrant in order to enter.  It specifically says

20     that the law enforcement shall remain with the children if

21     children are believed to be present.  If the child protective

22     services investigator has requested lawful --

23          THE COURT:  Wait, we have a court reporter.  Go

24     slower.  Start over again.

25          MS. BEY:  In part F of Family Court at 1034 section

6

PROCEEDINGS

1   two -- before I say that, the basis of my claim was under

2   Fourth Amendment violation.  So it started under Fourth

3   Amendment where they have to have a warrant that is supported

4   by officer affirmation.  Family Court at part section two,

5   part F, states the law enforcement shall remain where the

6   children are, the child or children are believed to be present

7   if child protective services investigator has requested law

8   enforcement assistance.

9            THE COURT:  Stop, stop, stop, stop.  I'm pausing you

10  because remember.

11           MS. BEY:  I speak so fast.

12           THE COURT:  Everybody does.  Just pause.

13           Can we have the last sentence read back?

14           (Whereupon, the record was read.)

15           MS. BEY:  Provided, however, that the law

16  enforcement may not enter the premise where the child or

17  children are believed to be without a search warrant or a

18  constitutionally based reason.

19           None of my children were screaming or crying.  There

20  was no blood at the scene.  There was nothing going on but me

21  educating my children because my children are homeschooled.

22           Also I provided another document in a subsequent

23  case, which was filed during this case, that says even if,

24  even if they want to say they had authorization to enter, this

25  document says for the children to be produced at the court and

PROCEEDINGS

1    for authorization to enter the premise, which is the first

2    document they do not have.

3          The first document only says for the children to be

4    presented not at the home but at the Bedford office, where

5    Ms. Antoine works.

6          Furthermore, if I was required to bring the children

7    to the Bedford office, I would have to know that I have to

8    bring them.  I had no idea that this happened.  I knew nothing

9    about this document at all until they came through my fire

10   escape window and threw it on my floor.  I had no opportunity

11   to even produce the children at the office.

12         THE COURT:  Uh-huh.

13         MS. BEY:  Because I knew nothing about it.

14         Also the Family Court Act sets the precedent that

15   law enforcement can be there but they can't enter without a

16   search warrant from the criminal court.  They have to go in

17   front of the criminal court and get that search warrant to

18   enter the home.  They had no warrant.

19         When the officer came through the window I said,

20   Excuse me officer, where is your search warrant?  He said to

21   me flat out, I don't have to have one.  I'm the police.

22         THE COURT:  Okay, all right.  I understand what your

23   reasoning is, let me hear from the defense.

24         MS. ROLON:  Yes, your Honor.  It is our

25   understanding that, our argument is there was a signed entry

PROCEEDINGS

1   order and that entry order suffices for the search warrant

2   requirement of the Fourth Amendment.  Specifically to the

3   Family Court Act that the plaintiff mentioned, it indicates in

4   Section C that the procedure for issuing an entry order under

5   the Act follows the same guidelines as Section 690 of the

6   Criminal Procedure Act -- Criminal Procedure Law; therefore,

7   establishing the same probable cause standard at least under

8   the Fourth Amendment.

9           THE COURT:  All right.

10          MS. ROLON:  Also, your Honor, I would like to simply

11  note, under Sutherland that the Family Court entry order is

12  equivalent of a search warrant.  As well as under the recent

13  case decided by Southern District of New York Judge Paul

14  Engelmayer, who found that the Family Court entry order is the

15  equivalent and cited the exact language found on the entry

16  order.

17          In the Shaheed case Judge Engelmayer found that the

18  language of the entry order, the exact language in this entry

19  order, was sufficient to also establish it as a search warrant

20  under the Sutherland standard.

21          THE COURT:  All right.  Sir, are you here for this

22  case?

23          AUDIENCE MEMBER:  Yes.

24          THE COURT:  Is he with you?

25          MS. BEY:  Yes.

PROCEEDINGS

1          THE COURT:  Does he want to sit up here with you?

2          MS. BEY:  He's fine there, thank you.

3          MS. ROLON:  Your Honor, if I may just mention that

4  we would like to know if this person was also a witness.

5          MS. BEY:  No.

6          THE COURT:  I don't know who this is.

7          MS. BEY:  This is --

8          AUDIENCE MEMBER:  The minister at the local temple

9  where Sister Empress is a member.

10         THE COURT:  Okay.

11         AUDIENCE MEMBER:  I'm just observing.

12         THE COURT:  When you say witness, what are you

13  contemplating?

14         MS. ROLON:  There was a gentleman present.

15         MS. BEY:  He's not here.

16         THE COURT:  Explain it to me.  We don't have any

17  kind of hearing or trial right now, so when you say witness I

18  understand the children may at some point be a witness to some

19  of the events talked about in the complaint, but do you have

20  any concern about this gentleman, a minister or some kind of

21  spiritual leader?

22         MS. ROLON:  We just wanted to verify he wasn't the

23  gentleman who was present at the incident.

24         THE COURT:  I see, fair enough.

25         Did you want to say anything further?

PROCEEDINGS

1          MS. ROLON:  Only to establish that, yes, the warrant

2     we provided and the warrant that Ms. Bey has in her hands at

3     this moment is signed by the judge.

4          THE COURT:  Your argument, aside from the case law

5     which you cite appropriately, is that this warrant which is

6     issued by the Family Court provides probable cause as required

7     under the Fourth Amendment to justify the entry into Ms. Bey's

8     home?

9          MS. ROLON:  It expressly says so on the Family Court

10     order, there was probable cause to believe that there was an

11     abuse or neglected child in the premise.

12          THE COURT:  All right.  So Ms. Bey, recognizing that

13     you're not a lawyer but obviously have been able to ably

14     represent yourself this far, the defense is correct that the

15     case law pretty uniformly recognizes that a warrant such as

16     this issued by a Family Court based upon its finding of

17     probable cause and authorizing the entry into a person's home

18     accompanied by police for a particular purpose, here to

19     determine that the children are present and to access the home

20     and to proceed thereafter with the child protective

21     investigation, is recognized as being equivalent to a warrant

22     under the Fourth Amendment; including as you alluded, to a

23     search warrant.

24          So while you're focused on the particular language

25     referring to a search warrant, the law recognizes that some, a

PROCEEDINGS

1    document like this issued by a court of competent jurisdiction

2    does meet that requirement.  That's what I have to look at

3    when as now you are trying to sue members of ACS and the

4    police for allegedly violating your Fourth Amendment right.

5              The fact that they were acting pursuant to this

6    warrant, which was issued by the Family Court for Fourth

7    Amendment purposes makes it fine; or therefore, it's not

8    violative of the Fourth Amendment.  Do you understand that?

9              MS. BEY:  I understand what you're saying, your

10   Honor.  But I would also like to put on the record that this

11   case was dismissed prima facie.  During that trial the

12   defendant Antoine stated on the record that they did not have

13   authority to enter on May 2, 2018.

14             THE COURT:  Who said that?

15             MS. BEY:  The child protective services agent,

16   Ms. Josephine Antoine stated on the record that she did not

17   have authority to enter, during the trial.  It was dismissed

18   prima facie.

19             THE COURT:  Whatever her belief might have been, I'm

20   looking at a warrant that authorized her and the other

21   officers entry into your apartment.  So her belief doesn't

22   govern here.  But rather this document, which I accept as

23   being authentic since it is the same one that was left with

24   you at the residence.  And furthermore, even if the officers

25   mistakenly thought that this was sufficient for Fourth

PROCEEDINGS

1   Amendment purposes, that would entitle them to qualified

2   immunity.  There is no reason for them to have known that this

3   didn't authorize their entry into your home because on its

4   face it says they could enter for the particular purpose

5   indicated in the warrant.  And that there was probable cause

6   to believe that an abuse or neglected child may being at the

7   premise.

8           MS. BEY:  Your Honor --

9           THE COURT:  Hang on.  Whatever happened with the

10  family law action after that does not undermine the

11  appropriateness for Fourth Amendment purposes of the officers'

12  conduct.

13          Now, I can't remember if you still have some kind of

14  a false arrest claim, or due process, or malicious prosecution

15  claim in this matter relating to what happened after the

16  May 2, 2018 entry.  That may still be viable.

17          MS. BEY:  The due process was for this part of the

18  claim as well.  That's the whole basis of my entire claim,

19  that I never had an opportunity to even be heard.  So it was

20  under Fourth and Fifth.

21          Also, I would just like to question the fact that I

22  am showing two different Family Court incidents in two

23  different cases.  But I'm showing that one paper, which is

24  from the same court, maybe a different judge, it says clearly

25  on the front of this paper:  Authorize investigation to enter

Rivka Teich CSR, RPR, RMR, FCRR
Official Court Reporter

PROCEEDINGS

1    the premise.  On the top of this --

2              THE COURT:  What document are you holding?

3              MS. BEY:  This is the same kind of document which is

4    the one that the defense presented.

5              THE COURT:  But a different date.

6              MS. BEY:  Different date.  And it says on it for the

7    children to be produced at the court and for authorization for

8    entry.

9              THE COURT:  Is this the April 16, 2019 --

10             MS. BEY:  Document, yes.

11             THE COURT:  -- warrant.

12             MS. BEY:  My whole thing is that's where my

13   understanding came from, that it had to have that language on

14   the paperwork.  Even though it says, this is a -- the

15   specific, the outline of this paperwork, it stayed the same,

16   they don't usually change it.

17             THE COURT:  Ms. Bey, the fact that it's different

18   doesn't make it insufficient.  It's possible that they changed

19   forms.  But the bottom line is, and the only question I have

20   to resolve, is whether or not it satisfies the Fourth

21   Amendment.  And the document we're focused on, the one from

22   May 2, 2019, does satisfy the Fourth Amendment; in that it

23   contains a finding of probable cause and an order authorizing

24   the agents of ACS and police officers to enter your home for

25   purposes of determining if children are present.

14

PROCEEDINGS

1          So I understand exactly what you're saying, those

2     two documents look different, but that in and of itself

3     doesn't make the one we're focused on, the one from May 2

4     relating to May 2, insufficient for Fourth Amendment purposes.

5     Do you understand that?

6          MS. BEY:  Somewhat, not really.

7          THE COURT:  Right.  As I said before, I understand

8     you're not a lawyer and your focus, not inappropriately --

9          MS. BEY:  It was not the focus on the fact, because

10    there is a lot of things that occurred that is not inside my

11    complaint.  In order for me to bring to the Court and say this

12    is what happened and this is what made me put it in the

13    complaint, it's irrelevant right now.  I don't have those

14    documents in front of the Court at the very moment.

15          But this paper that I have here now is actually a

16    four-page document, this is only one page, there were four

17    pages.  Before I appeared in court, because all of this

18    happened without a petition being filed in the court, when I

19    arrived at the court and up went to receive copies of this

20    document I received four unsigned copies.  The signature did

21    not appear on this document until after May 8, which was the

22    date that the petition actually occurred.

23          So my whole thing was the validity of this document

24    was in question.  Right now I can't prove that because I don't

25    have those documents that was printed out from the court at

PROCEEDINGS

1    that very moment.

2              THE COURT:  Now you're talking about the April 30,

3    2018 order of Judge Williams?

4              MS. BEY:  Right.  What I'm saying to the Court now,

5    when my children were removed on May 4, as stated in the

6    complaint, I appeared in the court on May 8.  When I appeared

7    in the court on May 8, I went to the court's record room and

8    requested copies of this document.  Because this was just

9    thrown -- this is the actual document thrown on the floor.

10             When I received the document it was a four-page

11   document that said application for entry order.  The gentleman

12   who works in the court printed out four different copies of

13   this four-page document.  And at that time none of them were

14   signed.  He was like, this is weird.  I said, it is weird to

15   me as well.

16             But then after the case was completely done, I went

17   to request the documents again.  That's when it had the

18   signature on it.

19             Then I have another document, which is not this one

20   but another one that has the same Outlook on it with the seal

21   on it.  Because I went back to the same location where you

22   request documents from the court.

23             Right now I'm still saying they don't -- I request

24   the validity of this paper because at the time while I was

25   going through this case it wasn't signed.  Then the lady

PROCEEDINGS

1    stated that she didn't have the authority.  But then later on

2    down the line it's signed and she had authority.

3          This judge didn't handle the case at all.  It was

4    handled by Elizabeth Bonnet.

5          THE COURT:  Let me ask you a question.  A document

6    was dropped on your floor at the time --

7          MS. BEY:  This here.

8          THE COURT:  Hang on.  The May 2 entry.  And you said

9    this one here, if you'll hand it up to my Deputy I'd

10   appreciate that.

11         MS. BEY:  This is the actual document dropped on the

12   floor.

13         THE COURT:  We're going to make a copy of that so

14   the report is clear.

15         And that document that I'm observing, it now has or

16   bears a signature of Jacqueline D. Williams.

17         So on the day that your home was entered, the same

18   exact warrant was provided to you as the defense is producing

19   to me now.

20         MS. BEY:  Right, it was thrown on the floor.

21         THE COURT:  Yet you're saying there is reason to

22   doubt the authenticity of the document, because when you

23   showed up on May 8 at the courthouse the clerk somehow printed

24   up unsigned copies for you.

25         MS. BEY:  Right.  I have unsigned copies at home.

PROCEEDINGS

1    But I didn't produce that to the Court before today.  I felt

2    like it would be improper to bring that today and say, hey,

3    these are the documents they gave me at court.  But I have

4    documents that were not signed on May 8 when I went to that

5    court, those documents were not signed.

6              THE COURT:  Let me say this, Ms. Bey.  I don't know

7    what to make of whatever you received or have at home.  But

8    the bottom line is I have nothing before me that suggests that

9    the warrant that you received on the day in question, and then

10   the warrant that is identical to it, a copy thereof being

11   produced by the defense now, is not authentic.  It certainly

12   was at the time it was served on you, signed, or a copy was

13   signed such that the officers who executed it would have

14   believed it to be valid.

15             So at a minimum, those officers would be entitled to

16   qualified immunity believing that they were executing a valid

17   warrant.

18             Further for my purposes even today, I don't have

19   anything before me that suggests it's not authentic.  I know

20   you're saying that there may be blank copies that you

21   received, but they are not in the record right now.  And this

22   issue was the subject of the proceeding today, and has been

23   the subject of the papers that have been submitted back and

24   forth, and yet you didn't produce it.

25             So like I said, I just don't have anything right now

PROCEEDINGS

1   to cast any doubt on the authenticity of the warrant that was

2   delivered to you or provided to you on May 2 and that is being

3   produced for me now both by you and by the defense.  It bears

4   a signature of a judge of the Family Court.  It authorizes the

5   entry into your home that did occur on May 2, 2018.

6          So regrettably to you, I have to dismiss the claim

7   relating to the unlawful entry, or the claim alleging unlawful

8   entry against six different defendants in this case.  You

9   still have other claims.

10         Let me clarify.  With respect to those other claims,

11  or all of the other claims, I had mentioned due process but

12  that claim was dismissed before, and I think appropriately.

13  What I wasn't sure of was whether or not you've been arrested

14  in connection with this entry on May 2, 2018; and apparently

15  you were not.  So there are no false arrest claims being made

16  on the basis of that entry into your home.

17         So let me recite my decision so that it's clear upon

18  what basis I'm making it.

19         The first issue is whether or not the defendant

20  officers could rely on the warrant in making the entry on

21  May 2, 2018 and whether their reliance on it violated the

22  Fourth Amendment.  I find that the officers were entitled to

23  rely on the warrant.  And that further, the warrant authorized

24  entry and satisfied the requirements of the Fourth Amendment.

25         Now, it's been clarified what wasn't clear in the

PROCEEDINGS

1   complaint, that the plaintiff, Ms. Bey herself, received a

2   full copy of the warrant, which bears the signature of Judge

3   Williams.  And as I said before, appears to be authentic.  So

4   I am incorporating by reference this warrant upon which

5   Ms. Bey has relied in her complaint.

6          As stated by the Second Circuit in Brass V. American

7   Film Technologies Incorporated 987 F.2d 142 at 150, a Second

8   Circuit case from 1993:  A Court may refer to documents

9   attached to the complaint as an exhibit or incorporated in it

10  by reference to matters of which judicial notice may be taken.

11  Or to documents either in plaintiffs' possession or of which

12  plaintiffs had knowledge and relied on in bringing suit.

13         So I think that doctrine plainly covers this search

14  warrant, which was referenced by Ms. Bey in her complaint, and

15  obviously forms the core of her unlawful entry claim.

16         Furthermore, stated by the Second Circuit DiFolco V.

17  MSNBC Cable LLC 622 F.3rd 104 at 111, Second Circuit 2010:

18  Where a document is not incorporated by reference, the Court

19  may nevertheless consider it where the complaint relies

20  heavily upon its terms and effect, thereby rendering the

21  document integral to the complaint.

22         Under both doctrines, I find that the warrant dated

23  April 30, 2018, should be and is therefore incorporated in the

24  complaint.

25         Now given that this is a state court order I can

PROCEEDINGS

1    take judicial notice of its existence as supporting the ACS

2    workers' and police officers' reasonable belief that they had

3    probable cause to enter Ms. Bey's home.  Additionally, Ms. Bey

4    has admitted she was given at least a portion of this warrant

5    on May 2, 2018.  She's now acknowledged that she received the

6    full, two-page document so she had knowledge of it prior to

7    her filing the amended complaint.

8              I find, as I mentioned before, that this document is

9    integral to the complaint since its existence is largely

10   determinative of Ms. Bey's allegations of unlawful entry.

11             Finally, I note that the Second Circuit in DiFalco

12   also cautioned against relying on documents outside the

13   complaint when there is a dispute as to the authenticity or

14   accuracy see of the document.  That's from DiFalco 622 F.3rd

15   at 111.

16             Here, however, the plaintiff has not provided any

17   reason for me to believe that this document is inauthentic,

18   and indeed was served upon the plaintiff on May 2, 2018, with

19   a signature as it appears now before me dated April 30, 2018.

20             Ms. Bey stated, but has not corroborated, that she

21   received blank copies from the clerk's office at some point

22   after or I guess on May 8, 2018.  I'm not considering that as

23   it's not been established that those copies exist nor had the

24   circumstances for which those copies, assuming they exist

25   giving rise to the production, been explained.  I don't find

PROCEEDINGS

1  it undermines what clearly presents to me as an authentic

2  document of which I can take judicial notice; namely, this

3  warrant dated April 30, 2018 authorizing the ACS workers and

4  police officers to enter defendant's home, which they did on

5  May 2, 2018.

6          Now the second issue is whether this Family Court

7  order provides ACS workers and police officers, who are

8  defendants in this case, with probable cause to enter

9  Ms. Bey's home on May 2, 2018.  There I find that it did.

10         As the Second Circuit has stated and as the defense

11  has reiterated, in Southerland V. City of New York, 680 F.3rd

12  127 at 144, in note 15, which is a Second Circuit case from

13  2014, I quote:  In child abuse investigations a Family Court

14  order is equivalent to a search warrant for Fourth Amendment

15  purposes.

16         This, Ms. Bey, is the case law that you may not be

17  aware of but that governs here.  Here the April 30, 2018,

18  order signed by Judge Williams in the Family Court states

19  that:  The Court finds that there is probable cause to believe

20  that an abused or neglected child may be at the premises of

21  plaintiff and therefore authorizes ACS works accompanied by

22  the police to enter plaintiff's home in order to conduct a

23  child protective investigation and to determine if children

24  were present in the home.

25         The order also notes that the police could use force

PROCEEDINGS

1    to enter the home.

2            I realize, Ms. Bey, you complained about the fact

3    that the officers entered through a window.  But they were

4    entitled to use force, which could have included breaking down

5    your door.  But they did not, rather they came in through an

6    open window.

7            You mentioned a statement by one of the officers

8    that they did need a warrant or because they were --

9            MS. BEY:  He stated that, I asked the officer,

10   excuse me, but where is your warrant?  He said, I don't need a

11   warrant, we're the police.

12           THE COURT:  Right.  Regardless of what he said or

13   even what the ACS worker may have said later in the proceeding

14   about their authority to enter or lack thereafter, that's

15   irrelevant.  Because in fact, they had the authority by virtue

16   of this Family Court order of April 30, 2018.  So those

17   statements are not relevant to my decision, assuming that they

18   were made.

19           Also, as I myself have previously stated in Wilson

20   V. Sessoms-Newton reported at 2017 Westlaw 357-5240 page five

21   on August 17, 2017:  Absent exigent circumstances or some

22   other exception, state actors must obtain a warrant before

23   they enter the home to conduct a search or otherwise intrude

24   on individual's legitimate expectation of privacy.

25           As I've indicated before, I'm aware that is the

PROCEEDINGS

1  general standard.  However, here I find, as I've said

2  repeatedly, that the Family Court order which is based on a

3  finding of probable cause, satisfies the Fourth Amendment's

4  warrant requirement, and that therefore, the defendants

5  lawfully entered plaintiff's apartment pursuant to the

6  April 30, 2018 order.

7          As I mentioned earlier, I'll reiterate, I also said

8  this in the July 15, 2019 decision I issued, that even

9  assuming for the purpose of this argument that it is not

10  definitively established that the Family Court order is the

11  equivalent of a Fourth Amendment or a warrant for Fourth

12  Amendment purposes, I would find that the defendant officers

13  were nonetheless entitled to qualified immunity or are

14  entitled to qualified immunity on this issue as I mentioned

15  earlier.

16          Ms. Bey, I understand that you're not an attorney,

17  but qualified immunity is a back stop for officers when they

18  act with a reasonable belief in the legality of what they are

19  doing.  Where a reasonable officer, the standard is, could

20  disagree with what they did as being illegal -- as being legal

21  or not.

22          As the Second Circuit said in Cornejo V. Bell 592

23  F.3rd 121 at 128, which is a Second Circuit case from 2010:

24  Qualified immunity shields executive employee, which would

25  include ACS workers from civil liability under Section 1983 if

24

PROCEEDINGS

1    it was objectively reasonable for them to believe that their

2    acts did not violate these clearly established rights by that.

3    The question here is whether or not they had any reason to

4    believe that their entry pursuant to this warrant violated

5    clearly established Fourth Amendment rights.  So I find that

6    even if some for reason this warrant from the Family Court or

7    order from the Family Court isn't the equivalent of a warrant

8    for Fourth Amendment purposes, the officers acted with

9    objective reasonableness in believing that it did and that it

10   authorized their entry into your home.

11           So therefore, the officers cannot be sued for

12   having -- or entitled to qualified immunity and cannot be sued

13   for having engaged in that conduct pursuant to this Family

14   Court warrant.

15           So this means, for all of these reasons that I am

16   dismissing the May 2, 2018 unlawful entry claim against

17   defendant Antoine who is mentioned earlier, defendant Caban

18   Quintero, Toddman, Gellineau, and Epstein.

19           Having dismissed this claim, however, I do note that

20   the following claims still remain in this action:  An

21   excessive force and false arrest claims -- I should have said

22   excessive force and false claims against defendant Roke based

23   on events of May 4, 2018.

24           MS. BEY:  Excuse me, your Honor.  There was a

25   correction to the spelling of the officer's name by the

PROCEEDINGS

1    defendant by corporation counsel.  It's now R-O-C-K-E.

2              MS. ROLON:  That's correct, your Honor.

3              THE COURT:  We'll ask the clerk's office to note

4    that for the record, R-O-C-K-E.

5              A false claim against defendant Mancilla based on

6    the events of May 22, train.  And an excessive force and false

7    arrest claims -- excessive force and false arrest claim

8    against defendants Shey and Court Officer 6768 based on the

9    events of October 9, 2018.  So those claims are still

10   proceeding.

11             Of the remaining defendants, only defendant Mancilla

12   has been served.  And to the extent that I referred to Corp.

13   counsel as defense counsel, I understand that they don't

14   represent at this time the individual defendants, but simply

15   represent -- who do you represent?

16             MS. ROLON:  Just the City of New York as an

17   interested party.

18             THE COURT:  You said that earlier.  Just the City of

19   New York as an interested party.

20             What has to happen next is proper service on all the

21   defendants.  If you anticipate that you'll end up representing

22   these individual defendants, is that the product of a lengthy

23   evaluation process?

24             MS. ROLON:  There are several decisions that go into

25   making a representation decision.  I would like to note to the

PROCEEDINGS

1    Court that we did provide service adjustments for the

2    remaining defendants that we had.  That was provided to

3    Ms. Bey by letter on November 26.  Only one of which remains

4    after your Honor's decision today.

5              THE COURT:  It would be helpful if you file that as

6    well so we have a record of it.

7              MS. ROLON:  Certainly.

8              THE COURT:  Rather than just your representation.

9              So given that the addresses have been provided,

10   summonses will be completed as to those additional officers

11   and then they will be served.

12             There is one defendant, Court Officer 6768, who

13   appears to be a state official and the Court is currently

14   awaiting more information from the New York State Attorney

15   General's Office on how to serve that defendant.  But once the

16   other defendants, city defendants, in addition to Mancilla are

17   served, then the City will determine whether or not they

18   represent them and appearances will be entered.  Or if these

19   defendants end up with their own counsel, then hopefully their

20   lawyers will make appearances and we'll go from there.

21             This process, Ms. Bey, may take a little bit of

22   time.

23             MS. BEY:  Understood.

24             THE COURT:  We now know which claims are going

25   forward.  And in a month or two, perhaps over the holiday into

Rivka Teich CSR, RPR, RMR, FCRR
Official Court Reporter

PROCEEDINGS

1    the New Year, the case will proceed on those claims against

2    those defendants who have been properly served.

3             MS. BEY:  Yes, ma'am.

4             THE COURT:  All right.  Anything else to address?

5             MS. ROLON:  Yes, your Honor.  If I just may add that

6    one of the incidents, the May 22 arrest, we are under the

7    impression it resulted in a conviction.  And in plaintiff's

8    complaint she's appealing that conviction.  We would like

9    clarification as it may inform our potential motion to stay.

10            THE COURT:  You wanted clarification on?

11            MS. ROLON:  Whether she's filing an appeal on the

12   convicted arrest.

13            THE COURT:  Go ahead.

14            MS. BEY:  I apologize.  As far as the May 22 event,

15   I am appealing that decision.  It was just like your Honor,

16   said I'm not a lawyer.  You see I have several cases in front

17   of different courts at one time.  So the process ended up like

18   stoped at a point, so I'm still in the process of appealing

19   that decision, as I am still in court with the defendants that

20   gave rise to that arrest.  So basically I'm in civil court

21   with the management agency that is involved with that

22   complaint.  And that outcome will be used in the appeal for

23   the criminal decision.

24            THE COURT:  Let me warn you of one thing.  I can't

25   give you any advice.  As you probably know, there are time

PROCEEDINGS

1    limits that apply in appealing a criminal conviction.  You

2    have to pay attention to those.  You had can't sit on your

3    rights with respect to your appeal.  You should be thinking

4    about whether or not you need to notice your appeal in

5    criminal court without waiting.

6              MS. BEY:  I noticed it.

7              THE COURT:  Okay.  You did so timely?

8              MS. BEY:  Yes, I did so timely.

9              THE COURT:  For your purposes, the City's purposes

10   that is, Corp. counsel more specifically, you should assume

11   she is appealing that criminal conviction arising out of the

12   May 22, 2018 arrest.

13             MS. ROLON:  Thank you, your Honor.

14             THE COURT:  Thank you all.  I appreciate it.

15             MS. BEY:  I want to clarify, since they are putting

16   the letter on the record, I don't have to provide the

17   addresses, correct?

18             THE COURT:  That's correct.

19             (Whereupon, the matter was concluded.)

20                    *     *     *     *     *

21   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

22

23   Rivka Teich, CSR RPR RMR FCRR
     Official Court Reporter
24   Eastern District of New York

25