UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
EMPRESS HADIYA BEY,

                              Plaintiff,

                    - against -

JOSEPHINE ANTOINE et al.,

                              Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-1877 (PKC) (RER)

PAMELA K. CHEN, United States District Judge:

    Plaintiff Empress Hadiya Bey, proceeding *pro se*, commenced this action on March 27, 2019, against 96 state, municipal, and individual defendants.  The Court has dismissed the claims against all but four defendants, including Defendant Jason Rocke ("Rocke"), as to whom the Court allowed 42 U.S.C. § 1983 claims to proceed for false arrest and excessive force based on events that took place on May 4, 2018.

    Before the Court is Defendant Rocke's motion to dismiss the allegations against him under Federal Rule of Civil Procedure 12(b)(6).  (Defendant's Motion ("Def. Mot."), Dkt. 67; *see also* 2/1/2021 Docket Order (construing Defendant's motion requesting a pre-motion conference as a motion to dismiss and ordering supplemental briefing).)  Rocke's motion also asserts qualified immunity with respect to the allegation that he falsely arrested Plaintiff.  (Def. Mot., Dkt. 67, at 3.)  The Court denies Rocke's motion in its entirety.

## BACKGROUND

**I.      Factual Background**

    The Amended Complaint alleges the following facts, which the Court accepts as true for purposes of this motion.  *See Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012).

On May 2, 2018, New York City Police Department ("NYPD") officers and Administration of Children's Services ("ACS") workers entered Plaintiff's apartment through a kitchen window, located off the fire escape, after Plaintiff refused to allow them to enter through her front door. (Amended Complaint ("Am. Compl."), Dkt. 7, at ECF[1] 64.) One of the two officers who entered through the kitchen window made Plaintiff and her children stay in the living room while the other officer opened the front door for additional police officers and ACS workers. (*Id.* at ECF 64–65.) "After an hour of probative actions[,] . . . all six of the individuals left [Plaintiff's] apartment." (*Id.* at ECF 65.)

On May 3, 2018, a Kings County Family Court judge issued an order finding that Plaintiff's children were "at imminent risk" in her home and granting their removal. (*Id.* at ECF 95.) The next day, ACS workers and several police officers, including Defendant Rocke, went to Plaintiff's home to remove her children pursuant to the order. (*Id.* at ECF 65; *see also id.* at ECF 87–95 (Family Court petition and removal order dated May 3, 2018).)

Plaintiff was away from home when the officers arrived, but returned when her husband called her. (*Id.* at ECF 65.) On the way, she called the police and told them that she needed help. (*Id.*) When she got home, she "ran up the stairs and immediately started looking for [her] children." (*Id.*) She heard her daughter screaming in the bathroom. (*Id.*) Plaintiff opened the bathroom door, but an officer closed it and told her she could not go in. (*Id.*) Plaintiff responded, "You don't hear my fucking daughter screaming. How did yall get in here, you know full well you all are not supposed to be in my house." (*Id.*) An officer "showed [Plaintiff the] removal order." (*Id.*)

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

Plaintiff then joined her husband in the kitchen.  (*Id.*)  She saw officers "attempt[] to go after him," and she "jumped in between him and the officers to keep them from harming him and said, 'Don't fucking touch him he didn't do nothing wrong.'"  (*Id.*)  At that point she "knew [she] was going to be arrested because [she] was not letting them walk [her] children out of [her] house."  (*Id.* at ECF 65–66.)  She "intended to lock [her]self and all 8 officers inside the house."  (*Id.* at ECF 66.)  "[A]s [she] headed to the front door [Defendant] grabbed [her] and put handcuffs[] on [her] and he did not put on the safety locks."  (*Id.*)

Defendant and another officer took Plaintiff to the 77th Precinct.  On arriving at the Precinct, Plaintiff exited the police car and "headed toward the door," at which point the other "officer grabbed [Plaintiff] and forcefully pulled [her] backward[] which made the handcuffs tighter [and] immediately a sharp excruciat[ing] pain shot up [Plaintiff's] right arm and [Plaintiff] almost lost [her] balance."  (*Id.*)  Defendant then "tightly grabbed [Plaintiff's] left arm" and the other officer "pushed [her] forward."  (*Id.*)  Plaintiff "turned to [the other officer] and said 'Why are you pushing me like that . . . . [Y]ou're hurting me and why are these handcuffs so tight[?]'"  (*Id.*)  Plaintiff was placed in a holding cell and "they tried to remove the handcuff[s]," but "the pain was unbearable," so Plaintiff "told them to leave [her] alone."  (*Id.*)  "They did not call EMS, nor did they care that [Plaintiff] was in pain."  (*Id.*)

Plaintiff was charged with several criminal offenses, including obstructing governmental administration in the second degree and harassment in the second degree, in violation of, respectively, New York State Penal Law §§ 195.05 and 240.26.  (*Id.*)  All charges were dismissed at trial.  (*Id.*)

On April 1, 2019, Plaintiff told police officers that she was suffering from "nerve damage from [handcuffs] and [was] wearing a hand brace."  (*Id.* at ECF 70.)  When she filed her Amended

Complaint in May 2019, she had "nerve damage in [her] hands [that] [was] worst in [her] left hand as [her] thumb ha[d] been numb for about a month."  (*Id.* at ECF 71.)[2]

## II.    Procedural Background

On March 27, 2019, Plaintiff sued 96 state, municipal, and individual defendants seeking their criminal prosecution.  (*See* Dkt. 1.)  On April 22, 2019, the Court granted Plaintiff's application to proceed *in forma pauperis*, dismissed her criminal prosecution claims, and granted Plaintiff 30 days to file an amended complaint setting forth any plausible Section 1983 claims. (Dkt. 6.)  On May 17, 2019, Plaintiff filed an amended complaint naming over 150 defendants. (Dkt. 7.)  On July 15, 2019, the Court *sua sponte* dismissed Plaintiff's claims against all but 10 defendants, including Defendant Rocke, against whom the Court allowed Plaintiff's Section 1983 claims for false arrest and excessive force, based on the events of May 4, 2018, to proceed.  (Dkt. 9, at 22; Am. Compl., Dkt. 7, at ECF 65–66.)

On January 19, 2021, Defendant Rocke moved to dismiss the allegations against him under Federal Rule of Civil Procedure 12(b)(6).  (Def. Mot., Dkt. 67; *see also* 2/1/2021 Docket Order (construing Defendant's Motion as a motion to dismiss and ordering supplemental briefing).) Defendant also asserted qualified immunity with respect to the allegation that he falsely arrested Plaintiff.  (Def. Mot., Dkt. 67, at 3.)  At the Court's direction, Rocke filed a supplemental brief in support of his motion to dismiss on February 20, 2021.  (Defendant's Supplemental Brief ("Def. Br."), Dkt. 71.)  In his supplemental brief, Defendant reiterates his argument under 12(b)(6) and additionally appears to maintain that he is entitled to qualified immunity with respect to Plaintiff's

---

[2] Although Plaintiff references at least one incident in which she was handcuffed between May 4, 2018 and April 1, 2019 (*see, e.g.*, Am. Compl., Dkt. 7, at 69), the Court accepts, for the purposes of Plaintiff's *pro se* complaint, the inference that her alleged injury resulted from the handcuffing on May 4, 2018.

4

false arrest claim.  (*See* Def. Br., Dkt. 71 at 3 (arguing that Defendant had "arguable probable cause" to arrest Plaintiff, reflecting the qualified immunity argument in Rocke's motion to dismiss).)

**LEGAL STANDARD**

## I.      Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).  The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).  "In addressing the sufficiency of a complaint[, the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)*.

## II.     42 U.S.C. § 1983

Section 1983 "does not confer any substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Vill. of Freeport v. Barrella*, 814 F.3d 594, 600 n.8 (2d Cir. 2016) (quotations omitted).  "To state a claim under § 1983, a plaintiff must allege

that defendants violated plaintiff's federal rights while acting under color of state law." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (citations omitted).

### III.    Qualified Immunity

"Qualified immunity is available to officials" in a Section 1983 action "so long as their actions do not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   "To determine whether defendants enjoy qualified immunity, [courts in this Circuit] consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." *Id.* (citation and quotations omitted).

Although "qualified immunity should be resolved 'at the earliest possible stage in litigation'" *id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)), "as a general rule, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion," *id.* (citation, quotations, and brackets omitted).   Thus, "a qualified immunity defense can be presented in a Rule 12(b)(6) motion, but . . . the defense faces a formidable hurdle when advanced on such a motion." *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004).   "[A] defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route."   *Id.*   "Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."   *Id.* (citations and quotations omitted).   "Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.*

IV.     **Pro Se Filings**

"A document filed *pro se* is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations and quotations omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, federal courts "remain obligated to construe a *pro se* complaint liberally").   Courts liberally construe *pro se* complaints "particularly when they allege civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)); *accord Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

**DISCUSSION**

I.      **Plaintiff's False Arrest Claim Against Defendant Rocke**

In its July 15, 2019 Order, the Court allowed Plaintiff's false arrest claim against Defendant Rocke to proceed.  (*See* Dkt. 9, at 19–20.)  Rocke now moves to dismiss that claim under Rule 12(b)(6) and also asserts that he is entitled to qualified immunity as to that claim.

A.     **Legal Standards**

"Claims for false arrest brought under Section 1983 are substantially the same as claims for false arrest under state law." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (citation and quotations omitted)).  "Under New York law, to prevail on a claim for false arrest, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Id.* (citation, quotations, and alterations omitted).  In other words, "[t]o state a valid claim for false arrest . . . under § 1983, a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment . . . ." *Walker v. Sankhi*,

7

494 F. App'x 140, 142 (2d Cir. 2012) (summary order) (citing, *inter alia*, *Jaegly v. Couch*, 439 F.3d 149, 151–52 (2d Cir. 2006)).

"Probable cause is a complete defense to a constitutional claim of false arrest . . . ." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (citation omitted). "Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Id.* (citation and quotations omitted). "[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest," *Jaegly*, 439 F.3d at 153 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004))—"i.e., it is objective rather than subjective," *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 139 (2d Cir. 2010) (quotations omitted).

"In the context of a false arrest claim, qualified immunity protects an officer if he had arguable probable cause to arrest the plaintiff." *Myers v. Patterson*, 819 F.3d 625, 632–33 (2d Cir. 2016) (citation and quotations omitted). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* at 633 (citation and quotations omitted). "In other words, an officer lacks arguable probable cause and is not entitled to qualified immunity only where no officer of reasonable competence could have made the same choice in similar circumstances." *Id.* (citation and quotations omitted).

## B.    Plaintiff Adequately Pleads False Arrest as to Defendant Rocke

Rocke argues that Plaintiff's allegation that he falsely arrested her on May 4, 2018 should be dismissed because it fails to state a claim and he is otherwise entitled qualified immunity as to that allegation. As part of his motion, Rocke contends that the Court should judicially notice the arrest report, which, he argues, establishes probable cause.

1.  <u>The Amended Complaint States a False Arrest Claim as to Defendant Rocke and He Is Not Entitled to Qualified Immunity at This Stage</u>

Plaintiff alleges that "as [she] headed to the front door [Defendant Rocke] grabbed [her] and put handcuffs[] on [her]."  (Am. Compl., Dkt. 7, at ECF 66.)  Rocke does not contest that he "intended to confine" Plaintiff, that Plaintiff "was conscious of the confinement," that Plaintiff "did not consent to the confinement," *see Ashley*, 992 F.3d at 136 (citation and quotations omitted)), or that he deprived Plaintiff of her liberty, *see Walker*, 494 F. App'x at 142.  Rather, Rocke argues that "[t]here was probable cause to arrest [P]laintiff" for obstructing governmental administration under New York Penal Law § 195.05 (Def. Br., Dkt. 71, at 2–3), or that "[a]t a minimum, arguable probable cause existed," entitling him to qualified immunity (Def. Mot., Dkt. 67 at 3).

Section 195.05 prohibits "intentionally obstruct[ing] . . . the administration of law[,] . . . or attempt[ing] to prevent a public servant from performing an official function, by means of intimidation, [or] physical force or interference . . . ."  N.Y. Penal Law § 195.05.  "The elements of the offense are: 1) intent; 2) obstruction or impairment of a government function, or preventing or attempting to prevent the performance of that function by 3) physical interference."  *Esmont v. City of New York*, 371 F.Supp.2d 202, 210 (E.D.N.Y. 2005) (citation omitted).  Defendant thus must show that "[i]t was objectively reasonable under [the facts alleged in the Amended Complaint] for" him "to believe that [Plaintiff] was intending to obstruct" the officers in the performance of their government function.  *See Mitchell v. City of Albany*, No. 08-CV-871 (TJM), 2010 WL 1235389, at *4 (N.D.N.Y. Mar. 31, 2010).

As Defendant Rocke points out, Plaintiff attached to the Amended Complaint the May 3, 2018 Order of the Kings County Family Court finding that her children were "at imminent risk" and granting their removal.  (Am. Compl., Dkt. 7, at ECF 95.)  This Order authorized Rocke to

enter Plaintiff's home in the performance of an "official function." *See, e.g.*, *Shaheed v. Kroski*, 833 F. App'x 868, 870–71 (2d Cir. 2020) (summary order) (noting that "New York Family Court orders provide an independent basis for police officers to enter peoples' homes," so officers entering a home under such an order are "'performing an official function'"), *cert. denied*, No. 20-7704, 2021 WL 2405244 (U.S. June 14, 2021).

Plaintiff further admits that the officers "showed [her the] removal order" and that she "knew [she] was going to be arrested because [she] was not letting them walk [her] children out of [her] house." (Am. Compl., Dkt. 7, at ECF 65–66.)  She concedes that she "intended to lock [her]self and all 8 officers inside the house." (*Id.* at ECF 66.)

But Defendant Rocke fails to explain how "the facts [*he knew*] at the time of the arrest objectively provided probable cause to arrest" Plaintiff. *Jaegly*, 439 F.3d at 153 (citation omitted). Although Plaintiff confesses that she "intended to lock [her]self and all 8 officers inside the house," the only manifestation of this intent, according to the Amended Complaint, was Plaintiff "head[ing] to the front door," at which point Rocke handcuffed her. (Am. Compl., Dkt. 7, at ECF 66.)  Although, as Rocke notes in his motion, the "officers were present at [P]laintiff's home for the lawful removal of her children" (Def. Mot., Dkt. 67 at 2), this does not mean that Plaintiff was prohibited from leaving the apartment.  Thus, Plaintiff's "head[ing] to the front door," away from the children the officers were removing, did not provide either probable cause or even an arguably "objectively reasonable" basis for Rocke "to believe that [Plaintiff] was intending to obstruct" the officers in the performance of their government function. *Cf. Mitchell*, 2010 WL 1235389, at *4 (finding arguable probable cause to arrest the plaintiff for obstruction because the plaintiff "walk[ed] *in the direction* of the police vehicle" where her daughter was in custody even though the defendant "had repeatedly denied [the plaintiff's] request to release her daughter" (emphasis

added)); *Provost v. City of Newburgh*, 262 F.3d 146, 158 (2d Cir. 2001) (rejecting the defendant's assertion of probable cause as a defense to a false arrest claim, and declining to overturn a jury verdict, because "[t]he jury could reasonably have concluded that [the defendant] knew that [the plaintiff's] hollering and yelling through the window was for the legitimate purpose of getting the desk officer's attention, not to cause public inconvenience, annoyance or alarm" (quotations and brackets omitted)).[3]

Defendant Rocke also notes that Plaintiff "act[ed] uncooperatively by jumping in between her husband and officers and yelling obscenities." (Def. Mot., Dkt. 67, at 3.) But, again, Defendant was not at Plaintiff's home to remove her husband. (*See id.* at 2.) Defendant fails to explain how he reasonably could have believed that Plaintiff's jumping between other officers and her husband impeded the official function of removing her children. Defendant thus has not shown that "facts supporting [probable cause or arguable probable cause] appear on the face of the complaint," given that Plaintiff is "entitled to all reasonable inferences from the facts alleged, [including] those that defeat the immunity defense." *See Chamberlain*, 960 F.3d at 110.

## 2. The Court Declines to Judicially Notice the Arrest Report

Defendant Rocke asks the Court to consider, in assessing the issue of probable cause, "the NYPD Arrest Report." (Def. Br., Dkt. 71 at 2 (referencing Arrest Report, Dkt. 72-1).) The officer who filled out the Arrest Report wrote that "[Plaintiff] was refusing to comply with simple police commands[,] . . . was purposely stepping between officers and her children[,] . . . was coercing [her] children to be noncompliant to police[,] . . . was making physical threats to ACS

---

[3] While it appears from her allegations that Plaintiff was heading toward the front door to carry out her intention to "lock [her]self and all 8 officers inside the house" (Am. Compl., Dkt. 7, at ECF 66), there is no indication that Defendant Rocke knew that, or could have known that, at the point he handcuffed her.

11

workers[,] . . . [and] was attempting to block [her] children from ACS and police." (Arrest Report, Dkt. 72-1, at ECF 1.)  If the assertions in the arrest report are true, it likely establishes that Rocke had at least arguable probable cause to arrest Plaintiff for obstruction under Section 195.05.  The question thus is whether the Court can consider the arrest report, and, if so, for what purposes.

When considering the pleadings on a Rule 12(b)(6) motion, "[a] complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (citation and quotations omitted).  "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (citations and quotations omitted).  "A necessary prerequisite for taking into account materials extraneous to the complaint is that the plaintiff rely on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." *Id.* (citation and quotations omitted).

Further, "[u]nder Federal Rule of Evidence 201, a 'court may judicially notice a fact that is not subject to reasonable dispute.'" *Dixon v. von Blanckensee*, 994 F.3d 95, 102 (2d Cir. 2021) (quoting Fed. R. Evid. 201(b)).  "Such facts must either be (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.* (citation and quotations omitted).  "Put another way, facts appropriate for judicial notice must 'meet either one of the tests of indisputability contained in Rule 201(b): they should be common knowledge, or derived from an unimpeachable source.'" *Alvarez v. County of Orange*, 95 F. Supp. 3d 385, 398 (S.D.N.Y. 2015) (alterations omitted) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).  "Because the effect of judicial notice is to deprive a party of the

opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)."  *Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 70 (citations omitted).

Although some courts in this Circuit have observed "that a district court may rely on [arrest reports] in deciding a motion to dismiss under Rule 12(b)(6)," *Harris v. Howard*, No. 08-CV-4837 (CM), 2009 WL 3682537, at *2 (S.D.N.Y. Oct. 30, 2009) (quotations omitted), courts generally decline to judicially notice arrest reports to establish the truth of the assertions therein, *see Vasquez v. City of New York*, No. 99-CV-4606 (DC), 2000 WL 869492, at *1 n.1 (S.D.N.Y. June 29, 2000) (judicially noticing an arrest report "not for the truth of the facts set forth therein, but for the fact that the document[] existed").[4]  And some courts in this Circuit have declined to judicially notice arrest reports altogether.  *See, e.g.*, *Weaver v. City of New Yor*k, No. 13-CV-20 (CBA) (SMG), 2014 WL 950041, at *3 (E.D.N.Y. Mar. 11, 2014) (declining to "consider[] . . . an arrest report on a 12(b)(6) motion" in part because "it [did] not appear that the report of [the] arrest [was] in fact a public record, as the first page of the report state[d] that it contain[ed] sealed information").[5]

Defendant does not contend that Plaintiff incorporated the Arrest Report into her Amended Complaint by reference or that she "rel[ied] on the terms and effect of the document in drafting

---

[4] *See also Liang v. City of New York*, No. 10-CV-3089 (ENV) (VVP), 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013) (considering arrest reports "only to establish their existence and legal effect, or to determine what statements they contained[,] not for the truth of the matters asserted" (citations, quotations, and alterations omitted)); *cf. Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("If the court takes judicial notice, it does so in order to determine *what* statements [documents] contained—but *again not for the truth of the matters asserted*." (citation and quotations omitted)).

[5] *See also Coggins v. County of Nassau*, No. 07-CV-3624 (JFB) (AKT), 2008 WL 2522501, at *6 & n. 4 (E.D.N.Y. June 20, 2008) (declining to judicially notice police reports on a motion to dismiss); *Crews v. County of Nassau*, No. 06-CV-2610 (JFB) (WDW), 2007 WL 4591325, at *6 (E.D.N.Y. Dec. 27, 2007) (declining to take notice of "non-judicial documents (such as police reports)" on a motion to dismiss a claim of false arrest).

the complaint." *See Nicosia*, 834 F.3d at 230 (citation and quotations omitted). Nor has Defendant shown that the assertions in the Arrest Report are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," such that the Court could take judicial notice of the report. *See Dixon*, 994 F.3d at 102 (citations and quotations omitted).

First, the Arrest Report says it "contains sealed information" and "may not be made available to any person or public or private agency outside the police department." (Arrest Report, Dkt. 72-1.) Thus, as in *Weaver*, "it does not appear that the report of [the] arrest is in fact a public record." *See Weaver*, 2014 WL 950041, at *3.

Second, Defendant Rocke did not rely on the Arrest Report—prepared *after* the arrest—in deciding to arrest Plaintiff. Thus, the Report is not a potential source of probable cause—of which the Court might take judicial notice—but simply one side's characterization of past events. Even if the Court could take judicial notice of the Arrest Report, therefore, it may do so "not for the truth of the facts set forth therein, but [only] for the fact that the document[] existed." *Vasquez*, 2000 WL 869492, at *1 n.1. Because Rocke proffers the Arrest Report for the truth of the assertions therein (*see* Def. Br., Dkt. 71 at 3 (arguing Rocke had probable cause because "[t]he Arrest Report indicates that [P]laintiff was 'refusing to comply with simple police commands,'" etc.)), the Court declines his request to take judicial notice of the sealed Arrest Report.

Defendant Rocke relies on *Vasquez*, *Obilo v. City Univ. of City of New York*, No. 01-CV-5118 (DGT), 2003 WL 1809471, at *6 (E.D.N.Y. Apr. 7, 2003), and *Toliver v. City of New York*, No. 10-CV-3165 (PAC) (JCF), 2012 WL 7782720, at *6 (S.D.N.Y. Dec. 10, 2012), *report and recommendation adopted*, 2013 WL 1155293 (S.D.N.Y. Mar. 21, 2013), to argue that the Court may judicially notice the arrest report to establish the assertions therein. (Def. Br., Dkt. 71, at 2.) But, as noted, the prevailing view in this Circuit is that courts may take judicial notice of an arrest

report only "for the fact that the document[] existed" and "not for the truth of the facts set forth therein." *Vazquez*, 2000 WL 869492, at *1 n.1.  Indeed, the court in *Obilo* considered an incident report consistent with this practice, that is, not for the truth of the assertions therein, but because it was provided to the defendant-officer before the arrest and he "acted reasonably and in good faith in relying on the information" in determining whether probable cause existed.  2003 WL 1809471, at *6.  Similarly, in *Toliver*, the magistrate judge took judicial notice of an arrest report to ascertain the time the plaintiff was arrested, but not for the purpose of determining whether probable cause existed.  2012 WL 7782720, at *6.  By contrast, Rocke proffers the arrest report essentially as testimony regarding the events he claims gave him probable cause.  The Court declines to judicially notice the document for that purpose. *See, e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("[A] ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.").

Finally, Defendant Rocke asks that "the Court convert his motion to dismiss into a motion for summary judgment" if it "declines to take judicial notice of the NYPD arrest report."  (Def. Br., Dkt. 71, at 2 n.1.)  Federal Rule of Civil Procedure 12(d) provides: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Palin v. New York Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019) (quoting Fed. R. Civ. P. 12(d)).

Here, however, the Court finds that "converting this [Rule 12(b)(6)] motion to a motion for summary judgment under Fed. R. Civ. P. 56 . . . would be premature . . . given the lack of discovery." *Crews*, 2007 WL 4591325, at *6.  For example, Plaintiff has had no opportunity to depose Defendant Rocke or the officer who prepared the Arrest Report on which Rocke relies, or

to otherwise challenge its validity.  The Court therefore declines Defendant's request to treat the motion to dismiss as a motion for summary judgement without giving the parties the opportunity to develop a record.  Plaintiff's false arrest claim against Defendant may proceed.

## II.    Excessive Force

In its July 15, 2019 Order, the Court declined to dismiss Plaintiff's claim that Defendant Rocke "used excessive force when handcuffing Plaintiff."  (Dkt. 9, at 19–20.)  Rocke now moves to dismiss that claim under Rule 12(b)(6).

### A.    Legal Standard

In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court "concluded that where a claim for excessive force 'arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment.'" *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (quoting *Graham*, 490 U.S. at 394). "It is therefore analyzed under the Fourth Amendment's reasonableness standard, rather than under the subjective substantive due process approach, which requires consideration of whether the individual officers acted in good faith or maliciously and sadistically for the very purpose of causing harm." *Id.* (citations and quotations omitted).  "Because the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, determining whether the amount of force an officer used is reasonable requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (citation and quotations omitted).

"The proper application of the reasonableness standard, according to the *Graham* Court, 'requires careful attention to the facts and circumstances of each particular case, including' (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of

the officers or others,' and (3) 'whether the suspect is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (brackets omitted) (quoting *Graham*, 490 U.S. at 396). "[T]he reasonableness inquiry is an objective one." *Id.* (citation and quotations omitted). "It requires a court to view officers' actions in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation or the 20/20 vision of hindsight." *Id.* (citation and quotations omitted). "*Graham* thus stands for the proposition that a government officer may not intrude on a person's Fourth Amendment rights by employing a degree of force beyond that which is warranted by the objective circumstances of an arrest." *Id.* "[T]he objective reasonableness standard established in *Graham* applies to actions taken with respect to a person who asserts . . . a claim for excessive force after she has been arrested and detained, but prior to the time when she is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer." *Id.* (citation, quotations, and alterations omitted).

"[E]xcessively tight handcuffing that causes injury can constitute excessive force in violation of the Fourth Amendment . . . ." *Shamir v. City of New York*, 804 F.3d 553, 557 (2d Cir. 2015) (collecting cases). In considering whether handcuffing an arrestee "constitute[s] excessive force in violation of the Fourth Amendment," courts consider whether "(1) the arrestee's handcuffs were unreasonably tight; (2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the arrestee's wrists." *Cugini*, 941 F.3d at 612 (brackets omitted) (quoting *Esmont*, 371 F. Supp. 2d at 215). But although "[t]hese evidentiary factors may, indeed, prove useful to a district court in assessing the soundness of a handcuffing-based excessive force claim, . . . [t]he test of reasonableness under the Fourth Amendment . . . is not capable of precise definition or mechanical application." *Id.* at 613 (citation and quotations omitted). "A court's reasonableness analysis is not limited to a factual checklist; it must instead be guided by a

17

careful balance between the nature and quality of the intrusion and the countervailing government interests at stake under the circumstances." *Id.* (citation, quotations, and brackets omitted).

"Thus[,] a plaintiff asserting a claim for excessive force need not always establish that she alerted an officer to the fact that her handcuffs were too tight or causing pain." *Id.* "The question is more broadly whether an officer reasonably should have known during handcuffing that his use of force was excessive." *Id.* "A plaintiff satisfies this requirement if either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain, or both." *Id.* (citations omitted). "[A]s with all aspects of a Fourth Amendment inquiry, an officer's awareness is judged from the perspective of a reasonable officer on the scene." *Id.* (citation and quotations omitted). "[W]here an officer's use of force in handcuffing is plainly unreasonable under the circumstances *or* where a plaintiff manifests clear signs of her distress—verbally or otherwise—a fact finder may decide that the officer reasonably should have known that his use of force was excessive for purposes of establishing a Fourth Amendment violation." *Id.*

"[T]ight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008). "The most common injuries found to satisfy the injury requirement in handcuff cases are scarring and nerve damage." *Usavage v. Port Auth. of N.Y. & N.J.*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013).

### B.      Plaintiff Adequately Pleads Excessive Force

Based on a consideration of the relevant factors—*i.e.*, whether "(1) [Plaintiff's] handcuffs were unreasonably tight; (2) [Defendant Rocke] ignored [her] pleas that the handcuffs were too tight; and (3) the degree of injury to [Plaintiff's] wrists," *Cugini*, 941 F.3d at 612 (quoting *Esmont*, 371 F. Supp. 2d at 215)—the Court finds that Plaintiff has plausibly stated an excessive force

claim.  Plaintiff alleges that, at her home, Rocke "grabbed [her] and put handcuffs[] on [her] and he did not put on the safety locks."  (Am. Compl., Dkt. 7, at ECF 66.)  She asserts that she later asked, "[W]hy are these handcuffs so tight[?]"  (*Id.*)  Plaintiff alleges that when she was in a holding cell at the police station, "they tried to remove the handcuff[s]," but "the pain was unbearable," so Plaintiff "told them to leave [her] alone."  (*Id.*)  Finally, she alleges that she has "nerve damage in [her] hands [that] is worst in [her] left hand as [her] thumb has been numb for about a month."  (*Id.* at ECF 71.)  "[A]ccept[ing] as true all factual allegations and draw[ing] from them all reasonable inferences," *Rothstein*, 708 F.3d at 94, leads the Court to conclude that the Amended Complaint plausibly pleads that (1) Plaintiff's handcuffs were so tight they caused her severe pain, (2) she asked why they were so tight but Defendant Rocke did not respond or remove them, and (3) she suffered nerve damage as a result of their tightness.  Although Plaintiff notes that a different officer's act of "pull[ing] [her] backward[] . . . made the handcuffs tighter" (*id.* at ECF 66), the Amended Complaint at least plausibly alleges the handcuffs were too tight when Rocke placed them on her (*see id.*).

Defendant Rocke argues that the force he used in arresting and handcuffing Plaintiff was not excessive because (1) Plaintiff's "active and dangerous obstruction with [his official] function warranted [her] arrest, and [Rocke] was entitled to use at least some level of force to effectuate that arrest," and (2) Plaintiff suffered only "*de minimis* injuries."  (Def. Br., Dkt.  71, at 4.)  But the Amended Complaint belies both arguments.  As noted above, Rocke lacked arguable probable cause to arrest Plaintiff for obstruction.  And "nerve damage" is not a "*de minimis*" injury.  *See, e.g.*, *Usavage*, 932 F. Supp. 2d at 592 ("The most common injuries found to satisfy the injury requirement in handcuff cases are scarring and nerve damage.").  Plaintiff therefore has stated an excessive force claim against Defendant Rocke.

19

## CONCLUSION

Defendant Jason Rocke's motion to dismiss is denied.  Plaintiff's claims for false arrest and excessive force against Defendant Rocke may proceed.

SO ORDERED.

*/s/ Pamela K. Chen*

Pamela K. Chen
United States District Judge

Dated: August 23, 2021
      Brooklyn, New York