UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
EMPRESS HADIYA BEY,           *     Case No. 19-CV-1877(PKC)
                              *
                              *
              Plaintiff,      *     Brooklyn, New York
                              *     March 30, 2022
     v.                       *
                              *
JASON ROCKE, et al.,          *
                              *
              Defendant.      *
                              *
 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
BEFORE THE HONORABLE RAMON E. REYES
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff, Pro Se:     EMPRESS HADIYA BEY
                               Lyrics Playhouse Moorish
                               Sidbury Institute
                               P.O. Box 180
                               Bronx, NY  10472


For the Defendants             AMANDA M. ROLON, ESQ.
Michael Mancilla and Jason     New York City Law
 Rocke:                        Department Special Federal
                                Litgation Office of the
                                Corporation Counsel
                               100 Church Street
                               New York, NY  10007


For the Defendants Henri       MELISSA YSAGUIRRE, ESQ.
 Roc and Francis Shea:         New York State Office of
                                the Attorney General
                               28 Liberty Street
                               New York, NY  10005


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1        (Proceedings commenced)

2            THE COURT:  I'm going to ask you all to hang up and

3    dial back in.  I want to see if we can get rid of this static

4    because I'm having a difficult time hearing everyone.  I don't

5    know what's going on but I -- I think that -- hopefully that

6    will clear it up.

7        (Off the record)

8            THE COURT:  Okay.  I'm sorry, but it seems like

9    we're back in business.  The call is clear.  Again, this is

10   Bey v. Rocke et al., Docket Number 19-CV-1877.

11           Ms. Bey, are you there?

12           MS. BEY:  Islam.  I was already given it.  This is

13   (indiscernible) Bey again.

14           THE COURT:  Okay, great.  And, Ms. Rolon?

15           MS. ROLON:  Yes.  Hello.  Amanda Rolon with the

16   Office of Corporation Counsel, appearing on behalf of

17   defendant, Jason Rocke.  Good morning.

18           THE COURT:  And, Ms. Ysaguirre.

19           MS. YSAGUIRRE:  Melissa Ysaguirre, with the Office

20   of the Attorney General, for the state defendants.

21           THE COURT:  Okay.  All right.  Thank you.

22           Okay.  So we had been on the line with the very bad

23   static, discussing the issue of service of former officer,

24   Joey Brockington, and explain -- the Court explained to Ms.

25   Bey that it is not able to do a skip trace on him and find

3

1    him.

2         So unless Ms. Bey can find him, a good address for

3    service so the marshals can serve him, he will remain

4    unserved.

5         I will see if I can do public -- free public records

6    searches to see if we can get an address for him, but I can't

7    guarantee that we will -- that we can do that.  It seems like

8    almost every search service requires payment.

9         Now, I know that Ms. -- there have been a number of

10   things that have been filed since our last conference.  I'm

11   not sure that any of them require any action from the Court.

12   They -- but we can -- we can talk about them.

13        First though, Ms. Rolon, I know there was at least

14   one letter that Ms. Bey filed complaining that the city has

15   not responded -- had not responded at that point to the -- to

16   her discovery requests.

17        And you did answer that the time to provide those

18   responses had not yet arisen.  I assume now the time has

19   passed and the question is has the city responded to Ms. Bey's

20   written discovery requests?

21        MS. ROLON:  Amanda Rolon here?  Yes, Your Honor,

22   timely responses have been served upon plaintiff.

23        THE COURT:  Okay.

24        MS. BEY:  Islam.

25        THE COURT:  Yes?

4

1          MS. BEY:  May (Indiscernible) speak to that.

2          THE COURT:  Yes?

3          MS. BEY:  They gave me -- they gave me what they are

4    going to use for their defense.  They didn't respond to

5    anything I asked for.  Everything that I asked for is directly

6    related to this case.  It is actually what gave rise to this

7    case and they are the ones who have complete and total access

8    to those records.

9          Also, in accordance to that they have attempted to

10   have me assign them as my agent, knowing good and well we're

11   in litigation against each other, that they shouldn't be

12   asking me to sign for me to be them -- for me to be -- for

13   them to be an agent for me at all.  That's number one.

14         Number two, every time I ask them for something,

15   they're saying, oh, this person is my defendant -- I mean,

16   this person is my -- is my client and that's it and you're

17   asking for stuff that's outside of what the scope is.

18         And it's not outside of the scope, because everybody

19   keeps going and picking bits and pieces of this case that they

20   want to deal with, instead of dealing with it as an entirety.

21         As for example, the State of New York needs to be

22   talking to the City of New York.  You know, the people who's

23   representing the state defendants need to be talking to the

24   city people who's representing the city defendants so they can

25   get this together, because at the end of the day looking at

1    bits and pieces of this is not going to get the problem

2    solved.

3            It's looking like you want to see what you can find

4    against me, because asking me to unseal records that's sealed,

5    or asking me for medical documents that you can't even get

6    access to, that's a violation of my Fourth Amendment rights,

7    but we're already here on that.

8            So I'm asking for the same amount of respect that

9    you guys want from me.  I'm asking for the same thing, because

10    every time I ask for something I'm getting denied it, and then

11    you all want me to sign away my rights again like I'm a fool,

12    and I do not feel that you are taking me seriously.  I feel

13    like the religious discrimination is happening right here

14    again because I'm a Moorish American.  That's how I feel.

15            And you cannot tell me that I'm wrong for how I feel

16    based off of how you been behaving.  You all not taking

17    nothing seriously.  These people are running away and doing

18    whatever -- guilt is already there.  Everything was dismissed

19    with prejudice.  So, therefore, once it's dismissed with

20    prejudice and sealed, there's a crime that has occurred.

21            The City of New York and the State of New York need

22    to get together and figure out what's going on in these courts

23    and fix the problem.  You all sitting here denying me records

24    that's mine.  I'm asking you to send me what's mine so I can

25    properly put on this case because I'm going to trial.  And

1      with that I yield the floor.

2              MS. ROLON:  Your Honor, Amanda Rolon, may I please

3      respond?

4              THE COURT:  Yes.

5              MS. ROLON:  Just to respond to two points made by

6      plaintiff.  I just wanted to confirm that discovery responses

7      were sent to plaintiff by email on February 3rd, 2022 and the

8      subject of that email is Jason Rocke's discovery responses

9      dated February 3rd, 2022, if that helps at all as a reference

10     for plaintiff.

11             And then the second thing, just to shed light for

12     the Court on the agent issue.  What I believe plaintiff is

13     referring to is the 160.50 release that was requested back in

14     2020 when this action -- or early in 2020, when this action

15     was still at it's very early stages.  I am under the

16     impression that that release was executed in person by Ms. Bey

17     and the documents related to the alleged incident, which were

18     sealed, have been obtained and disclosed to plaintiff as part

19     of our initial disclosure.

20             MS. BEY:  I never signed anything.  So I never

21     signed anything for you all, never.  So who gave you all

22     permission?  This is what I saying.  I didn't execute nothing

23     with you all in person to look nothing.  So what are you

24     talking about?

25             And then not for nothing, but what you sent me was

7

1      what already occurred.  I have those records already.  You

2      didn't send me nothing I asked for.  Discovery is --

3                    MS. ROLON:  Your Honor.

4                    MS. BEY:  -- what I ask for, not what you think I

5      need.

6                    MS. ROLON:  Your Honor, I was the person who met

7      with Ms. Bey in the lobby of my office building to obtain the

8      executed release and that was handed to me in person and that

9      was processed and conceded.

10                   MS. BEY:  I signed a -- I signed a release.  I

11     signed it for you to be my agent?

12                   THE COURT:  No, it's not for her to be your agent.

13     Just so you understand, Ms. Bey, a 160 -- when someone is

14     arrested and a conviction is not obtained, all of the records,

15     court records, police records, are sealed pursuant to Criminal

16     Procedure Law 160.50.  160.50  That means no one can take a

17     look at them.

18                   MS. BEY:  Right.

19                   THE COURT:  When someone subsequently brings a case

20     concerning that arrest those records become relevant and so

21     the person signs -- and the Court can enforce it -- they sign

22     what's called a 160.50 release.  That permits the defendant --

23                   MS. BEY:  Okay, but what does that have to do with

24     medical records?

25                   THE COURT:  Hold on.  Hold --

1          MS. BEY:  What does that have to do with education

2     records?

3          THE COURT:  -- on, just hold -- let me finish,

4     please.

5          MS. BEY:  My apologies.

6          THE COURT:  The 160.50 release allows the defendants

7     to obtain those records and give them to the plaintiff and

8     also use them to defend the case.  It doesn't -- when you sign

9     a 160.50 release you're not saying that the defendants are

10    your agents.  You're just allowing them to obtain these

11    records that have been sealed.  Yes, it does not have anything

12    to do with medical -- medical records, but --

13         MS. BEY:  Islam.  So that's my problem.

14         THE COURT:  Okay.  But --

15         MS. BEY:  My problem is, is they're asking me for

16    records back to 2007, my personal records, journal entries,

17    all of my friends and family members' numbers, and all of this

18    stuff that they're asking me for that's a violation of my

19    First -- Fourth Amendment rights and my First Amendment

20    rights.

21         So at the end of the day what you're looking for

22    there's nothing to find.  The cases were dismissed, all of

23    them.  So there's nothing to find.  There's no defense for

24    you.  I don't understand --

25         THE COURT:  Two -- okay.

9

1          MS. BEY:  -- what we're going back and forth about.

2          THE COURT:  Okay.  Well, you have filed, in part, a

3     excessive force case where you claim to have suffered injuries

4     as a result of --

5          MS. BEY:  Yeah.  Every day.

6          THE COURT:  -- the actions of the officers.

7          MS. BEY:  Yes.  Every day.

8          THE COURT:  Right?

9          MS. BEY:  All the time.

10          THE COURT:  So that places --

11          MS. BEY:  So there is no doctor.  There is no

12     doctor.  The person who's suffering is me.  The person who is

13     experiencing is me.  New York do not treat us the same way.

14     You all know how what's going on out here, so I don't know why

15     everybody acting like they don't know what's going on out

16     here.  You all know how they treat the Asiatics.  So I don't

17     know why you all don't know what's going on here.

18          They took me -- them same court officers took me to

19     the doctor while I was abused by nurses in there.  So I'm

20     going to go somewhere else to get abused by doctors and nurses

21     because of what I look like.  We not going to play this game,

22     because we playing games now.  That's how I feel.  I feel like

23     you all trying to play games with me and my family.

24          THE COURT:  All right.  We're not playing games.

25          MS. BEY:  And we not getting no recourse.

1            THE COURT:  Ms. Bey, I am certainly not --

2            MS. BEY:  And I'm not talking about you, Your Honor.

3        I'm talking about these attorneys that sitting here

4    trying to defend people who are criminals, that been doing

5    this for over 20 years.  This is not just the first time.  And

6    we want to sweep stuff under the rug and have people sign --

7    sign waivers and stuff saying they won't talk no more.  I'm

8    not playing.  You all playing.  You all have -- you all abuse

9    people.  The City of New York have the NYPD abusing people and

10   then having them sign gag orders and pay them off.  I'm not

11   doing that.

12           So let's talk what we going to discuss at trial and

13   that's it.  Anything else you requested from me, I'm not

14   giving it to you all.  I'm not giving you my private

15   information.  I'm not giving up my friends.  My friends is

16   afraid of you all.  You all sitting here scaring all my family

17   members and friends away.  We not going to keep doing this.

18   We need resolution.

19           If we not going to get no resolution, give me some

20   type of order to take to a higher court, because we sitting

21   here going back and forth about stuff that you all know you

22   all wrong about.

23           Everything was dismissed with prejudice and every

24   case is closed and sealed.  I don't have nothing on me.  I've

25   never been a criminal, so why are we here?

1          THE COURT:  You brought the case, Ms. Bey.

2          MS. BEY:  Exactly.  I brought the case because they

3     don't know how to control their people.

4          THE COURT:  And -- and --

5          MS. BEY:  I mean, I want to know why we even having

6     this conversation right now.  When is trial?

7          THE COURT:  That is for the district judge to

8     decide.  That is not my call.

9          MS. BEY:  Okay.  So I need to -- I need that to

10    happen.

11         THE COURT:  My call is discovery.  My call is

12    discovery.  That's --

13         MS. BEY:  Okay.

14         THE COURT:  -- that's within my purview.  And as

15    part of discovery, if you are insisting on going forward with

16    your excessive force case that resulted in injuries, the

17    defendants are entitled to see any medical records concerning

18    those injuries or pre-existing injuries --

19         MS. BEY:  Well, if they can get them without my

20    signature --

21         THE COURT:  -- to take part of -- don't interrupt

22    me.  Ms. Bey, don't interrupt me.

23         If you are insisting on going forward with an

24    excessive force that resulted in injuries, the defendants are

25    entitled to see your medical records concerning those injuries

12

1    or any prior injuries to those same body parts.  That's why

2    they ask for a medical release.  If you didn't seek medical

3    treatment for any injuries you sustained as a result of these

4    two incidents, then there are no medical records.  So signing

5    a release for them to obtain it is a no-brainer.  There are --

6              MS. BEY:  Islam?

7              THE COURT:  There are no records to get.

8              MS. BEY:  I'm not trying to be disrespectful, Your

9    Honor.  What I said to Ms. Ysaguirre was, if I can't get them,

10   I'm not signing for you to get them either.

11             THE COURT:  I -- you have every right --

12             MS. BEY:  That's exactly what I said.

13             THE COURT:  You will have every right to get a copy

14   of those records if they -- if they obtain them.

15             MS. BEY:  Right.  No, I should be able to obtain

16   them and then send them over to them.

17             THE COURT:  But that's -- no.

18             MS. BEY:  Why should I have to --

19             THE COURT:  They're --

20             MS. BEY:  -- get them?

21             THE COURT:  Because --

22             MS. BEY:  This is the problem.

23             THE COURT:  No, this is not a problem.  This happens

24   --

25             MS. BEY:  This is the problem.  (Indiscernible) here

1  in America.

2      THE COURT:  Ms. Bey, I've been doing this for 16

3  years and I was an attorney for 15 years prior to that.  This

4  is routine --

5      MS. BEY:  Okay.

6      THE COURT:  -- in a case involving personal

7  injuries.  A defendant --

8      MS. BEY:  All right.  But I don't have any rights to

9  --

10      THE COURT:  -- does not have to -- don't interrupt

11  me.

12      MS. BEY:  -- my records before somebody else?

13      THE COURT:  Okay.

14      MS. BEY:  Is that what you're telling me?  Are you

15  telling me I don't have right to see my own stuff before

16  anybody else, because that's what you're telling me right now.

17      THE COURT:  You have -- no, I'm not telling you

18  that.

19      MS. BEY:  You're telling me my Fourth Amendment

20  rights don't matter.

21      THE COURT:  You can -- you can get -- you can get

22  the records any time you want by going to your providers and

23  (indiscernible).

24      MS. BEY:  No, I can't.  The hospital told me I can't

25  have them.  They flat out told me in my face, no.

1          THE COURT:  That's wrong.  If they told you that,

2     that's wrong.

3          MS. BEY:  That's what they did.  The hospital flat

4     out told me no, get out of here.  They not giving me nothing.

5     I been trying to get these records.  This is why I said what I

6     said, Your Honor.  I'm not trying to be belligerent or

7     non-compliant.  I'm just saying, when I asked for the same

8     records that they asked me for, I got turned away and told to

9     get out of here, that they not giving me nothing.

10          THE COURT:  Okay.  Here's what we're going to do,

11     because Ms. Bey is concerned that the City -- the State will

12     get medical records -- her medical records before her.  Simple

13     solution.  Ms. Bey signs a release for each provider.  I don't

14     know how many there are.  You sign a release for each

15     provider.  Ms. Ysaguirre, Ms. Rolon, whomever, prepares a

16     subpoena for them with -- for the Court's signature with the

17     return to be the -- the return will be to the Court.

18          So that we will get the records before anyone else,

19     and then we will simultaneously provide a copy to Ms. Bey and

20     the defendants, to be kept --

21          MS. BEY:  Thank you so much.

22          THE COURT:  -- confidential, attorneys eyes only.

23          MS. BEY:  Thank you.  That's all I -- that's all I

24     was asking.

25          THE COURT:  I'd like to -- I'd like -- I'd like to

1    see those subpoenas by the end of next week.

2            MS. BEY:  Thank you.

3            THE COURT:  But that means, Ms. Bey, that you're

4    going to have to sign a release -- the releases.

5            MS. BEY:  That's not a problem.  As long as I -- as

6    long as I'm aware that it's not going to be shared with anyone

7    else besides the attorneys on this case, I am fine with that.

8            THE COURT:  Okay.  What other -- Ms. Rolon, what

9    other issues are there in discovery that need my attention?

10           MS. ROLON:  Well, Your Honor, in addition to the

11   releases which weren't provided, plaintiff has failed to

12   provide responsive -- responsive responses to our document and

13   discovery requests.  Both the interrogatories and the first

14   discovery document requests from our office.

15           Plaintiff -- you know, just to give an idea of

16   what's been going on in the background.  Plaintiff has

17   forwarded me, I believe, 80 or more emails with documents,

18   attachments, photos, majority of which do not apply to this

19   action.  And --

20           MS. BEY:  Islam.

21           MS. ROLON: If I may?

22           THE COURT:  Just let her finish.

23           MS. ROLON:  And so, at this time, Your Honor,  my

24   office is preparing a deficiency letter to serve plaintiff and

25   hope that we can resolve this issue before having to raise it

1     again with the Court.

2            MS. BEY:  Islam.  I have a response to that as well.

3     So they asked for the emotional damages, the effects to my

4     business and my personal relationship and to my life.

5            Now we're not in 2018 anymore.  We're in 2022, and

6     this is having effect on my life right now.

7            Everything that I have sent over to both the New

8     York State and the New York City office is what will be used

9     as evidence to the emotional distress, the effects to my

10    business, the effects of my personal relationships, the

11    effects to my religious observances and how I be treated, the

12    defamation, and the unequal protections at law.  All of this

13    is what I am raising as questions in my case.

14           If they read the entire thing that I submitted to

15    the Court, both the first one that the judge told me to amend,

16    and right now, they would understand.  See, the problem is, is

17    people don't read with comprehension.  They read to see what

18    they want to see.  You asked me for proof.  The proof is

19    happening right now.

20           Okay, in 2018, yeah, my children were in the system

21    and all that and case was dismissed and all that.  You all

22    have all that evidence already.  But guess what?  Their

23    actions are having an effect on my life right now today.

24           So with that in mind, all of the evidence you asked

25    for, I sent it to you.  I sent you the witness list because

1    those are people who know what happened.  I sent you proof of

2    emotional distress.  I sent you -- I sent you proof of mental

3    anguish.  I sent you proof of effects to my business.  I sent

4    you proof of how it's affecting me right now, what happened in

5    2018.  Everybody keeps overlooking the facts.  There are more

6    facts to this case than just that arrest.  You have to look at

7    all of the facts, what led up to it and everything.

8            I know when I was in school, when we was taught

9    about science, there was a question.  Once there was a

10   question, once the question was there, you tested it.  How did

11   you test it?  By putting different things in different places.

12   I don't have to give you the breakdown of what my

13   demonstration is going to be at trial, but I do have to give

14   you the evidence that I plan on submitting.

15           At the end of the day, I don't have videos, and I

16   don't have text messages and stuff from 2018 when this was

17   happening.  The only thing I have from then is the same

18   records that you have that you sent me.

19           Right now, as it stands, all of them ACS case

20   records and stuff that I asked you for, that I asked you to

21   get, those is going to be what's going to help you.  That's

22   going to be what's going to help you formulate your argument,

23   but you can't formulate your argument off of something that

24   was dismissed with prejudice.  So everything you asking me

25   for, it's already been handled and it has nothing to do with

1     this case.

2            But my mental anguish, and my emotional distress,

3     and what I'm going through with my family and friends, and me

4     feeling isolated, and me feeling like I'm being picked on and

5     discriminated against, that's the real effect of what

6     happened.  That's actually what I'm going through right now.

7            So I understand how you don't understand how that

8     has anything to do with the case right now, but if I have a --

9     without a doubt, a contradiction.

10           I'm going to show you how it's been over a 20 year

11    practice of the State and the City of New York to discriminate

12    not only against Asiatics, but to be even more harsh or

13    Moorish Americans, and that's just it.  And with that, I yield

14    the floor.

15           THE COURT:  Ms. Bey, every litigant in a civil case

16    is entitled to ask the other side for what they consider to be

17    relevant documents and interrogatories; ask questions in the

18    interrogatories on what they think is relevant to the case.

19    They're not limited to what the other side says is relevant.

20           So when the city and the state serve discovery

21    requests, you have to respond to them line by line saying --

22           MS. BEY:  I did respond to them.  I gave them a

23    clear response and then I sent it to the Court.  That's my

24    response.  And I stand on that.

25           THE COURT:  That -- they're entitled to written

1      responses, not what you say.

2                MS. BEY:  I did.

3                THE COURT:  I have --

4                MS. BEY:  I did send the written responses.

5                THE COURT:  Okay.  Okay.  All right.

6                MS. BEY:  I submitted both to them and the Court.

7                THE COURT:  Okay.  And if --

8                MS. BEY:  That's my response.

9                THE COURT:  -- if they believe that the responses

10     are not sufficient, they have to meet and confer with you and

11     explain why, whether in -- whether in writing or in person,

12     and if you --

13                MS. BEY:  It's a dispute.

14                THE COURT:  So if you still, at that point refuse --

15                MS. BEY:  We are disputing.

16                THE COURT:   Let me -- just let me finish.  I'm

17     trying to explain the process to you.

18                If you --

19                MS. BEY:  Uh-huh.

20                THE COURT:  -- will not amend your responses and

21     produce additional documents to satisfy their concerns, they

22     will then bring a motion to compel to me.  So I -- it seems

23     that you're not --

24                MS. BEY:  You're trying to compel me to do what?

25     Something that I can't give them.  You're asking me to give

1    them something I don't have.

2              THE COURT:  Well --

3              MS. BEY:  So --

4              THE COURT:  -- that's -- but that's the response --

5              MS. BEY:  -- I gave them my response.

6              THE COURT:  That's the written --

7              MS. BEY:  I gave them the response.  That's the

8    response.  That's what they got.  That's the response that --

9              THE COURT:  I don't have --

10             MS. BEY:  -- I gave them what I have.

11             THE COURT:  -- I don't have any of these documents.

12   So they're -- they'll --

13             MS. BEY:  They have the documents.

14             THE COURT:  -- meet and confer with you about that.

15   If they think that you should have some of these documents,

16   they'll press you on it.  If you don't have them, you don't

17   have them.  But if you do have something that they think is

18   relevant that they have asked for, you're obligated to produce

19   it, unless you have a valid objection to it.  And I haven't

20   seen the written responses --

21             MS. BEY:  I'm not objecting to anything.  All of my

22   objections is my Fourth Amendment rights stand, and I wrote it

23   and it's on the record.  I filed everything that I've sent to

24   Ms. Ysaguirre or to Ms. Rolon.  I filed it on the docket as

25   well.  I don't never leave nobody out of the loop.

1    So I'm not sitting here playing games with nobody.

2    I'm standing on my square and I'm standing on my Fourth

3    Amendment rights, and that's it.  And anybody that's going to

4    tell me that my First and Fourth Amendment rights don't

5    matter, we can talk about it with somebody else.  And that's

6    how I'm standing on that.

7        THE COURT:  All right.  All right, Ms. Rolon, Ms.

8    Ysaguirre, if you believe that Ms. Bey's written responses to

9    the discovery requests are insufficient, you're obligated to

10   meet and confer with her.  If you have not already done so,

11   please do so.  If you can't get satisfaction, then you're

12   entitled to bring a motion to compel.

13       But when you -- when -- whether it's the defendants

14   or, Ms Bey, if you bring a motion to compel, you have to show

15   me the requests, the written requests, and responses.  I can't

16   make rulings on whether discovery should be produced or not

17   without knowing what the specific request is and the specific

18   response.

19       It's in our local -- our local rules.  When you're

20   making a motion to compel, you have to provide the Court with

21   those written requests and responses so the Court can rule.

22   And that's all I can say about that.

23       Ms. Bey, have you -- you've received now, the

24   written responses to your discovery requests, is that correct?

25       MS. BEY:  Yes.  Yes, I've received written

1    responses.

2            THE COURT:  Okay.  Do you deem them to be sufficient

3    or not?

4            MS. BEY:  No, I do not, and I really don't feel like

5    I need to do a motion to compel everything -- anything,

6    because I have all of the evidence I needed anyway.

7            THE COURT:  Okay. If you don't -- if you don't want

8    to bring a motion to compel, that is your -- that is your

9    prerogative.  That's fine.  Unless I see one, and if you do

10   later decide you want to compel them, you first have to meet

11   and confer, try to resolve the dispute.  If you can't resolve

12   it and you want to bring a motion to compel, you have to send

13   me a document that's entitled motion to compel and you have to

14   say, I asked for this, I think it's relevant.  They haven't

15   given it to me and here is their response to my request, so I

16   can see whether what you're asking for is relevant and, if

17   necessary, compelled them to produce it.

18           MS. BEY:  Thank you very much, Your Honor.  And I

19   would expect the same from them.

20           THE COURT:  Yes.  As I say in -- often, discovery is

21   a two-way street.  All right.

22           What else do we need to discuss today?

23           MS. YSAGUIRRE:  Your honor, Melissa Ysaguirre for

24   the state defendants, which are Court Officer's Shea and

25   Rocke.

1          As far as the status, or discovery status with the

2     state defendants, I did actually have a meet and confer with

3     Ms. Bey on March 16th.  I have -- and before that meet and

4     confer by phone, I sent her a deficiency letter on March the

5     2nd.

6          We were not able, in my opinion, to resolve any

7     discovery disputes, and I just wanted to clarify that that

8     could be because Ms. Bey has not provided itemized responses

9     which correspond to each interrogatory and document request.

10         I'm having a similar issue as city defendants in

11    that Ms. Bey refuses to sign a CPL release so that we can

12    obtain the records relating to the arrest which occurred on

13    October the 9th, 2018.

14         And then also, we wanted her to -- or we requested

15    that she sign medical releases, and I'm -- from the unusual

16    occurrence reports, she was treated by, SDNY EMTS and then

17    taken into Brooklyn Hospital.

18         So those are the two medical providers that I'm

19    aware of, but because Ms. Bey hasn't responded to our

20    requests, you know, on an itemized fashion and kind of just

21    has -- I guess, I'm not sure, but, has a blanket objection to

22    signing any releases, I'm not aware, you know, of any other

23    medical providers.  If --

24              THE COURT:  Okay.

25              MS. YSAGUIRRE:  -- if she doesn't have documents, or

24

1    she wasn't treated by any other medical providers, we would

2    just ask that she provide itemized responses to let us know

3    if, you know, she doesn't have any documents that are -- that

4    are being requested or, you know, if there are no more -- no

5    more medical providers other than the two that I just

6    mentioned that could clear up some of the issues with

7    discovery.

8         So otherwise, the state defendants would be making a

9    motion to compel.

10        THE COURT:  Okay.

11        MS. BEY:  Islam.  I do have one question.  Just one.

12   You all do realize I'm not an attorney, right?  And you all

13   also realize I have children that are home schooled and I also

14   have many businesses that I run.

15        I find it really unfair that you believe that I

16   should sit down every single day and answer you line by line,

17   number by number, when I have written you a response.  Fully

18   written, clear and concise as to what you are saying.

19        And I feel like it is not fair that you think I

20   should do what you have to do as an attorney, because your

21   defendants were wrong.

22        Now I understand there's no such thing as fair and

23   unfair here because we're in court, but I do think you all

24   need to stop trying to push undue hardship -- undue hardship

25   on me and understand that this is not the only case that I'm

25

1    litigating, but because the City of New York and the State of

2    New York failed to protect me, I have three other cases in

3    other courts.

4            So what I -- when I respond to you, I respond to you

5    in an intelligent tone, and I respond in a way that when

6    somebody is responding to somebody, they write.  I am a

7    writer, so I know how to be clear and answer questions in my

8    paragraphs.

9            I really do not believe that you guys are reading

10   what I'm sending you.  I do not believe that you guys are

11   reading the emails I'm sending you.  I don't believe that you

12   guys are doing any of the reading that is required in this

13   case, but I understand that you are busy.

14           And like I said to the -- to the judge, and I'm

15   going say to you, Ms. Ysaguirre, and to you, Ms. Rolon, if you

16   feel that you need to send a motion to compel, please do so

17   and I will respond in like fashion to your motion, because

18   that's what people do to motions.

19           And I think at this point, I'm going to stop

20   speaking because I feel myself getting a little aroused, and I

21   don't want to get out of -- I don't want to respond or move

22   out of the quality of character as a Moorish American, so I'm

23   a yield the floor and just listen from here on out, and with

24   that, I'm going to say peace.

25           THE COURT:  Well, you raised two -- actually three

1    issues, Ms. Ysaguirre.  One, the lack of a 160.50 release,

2    two, the lack of medical releases, and three, the adequacy of

3    Ms. Bey's written responses to your discovery requests.

4            With respect to the first, the lack of a 160.50

5    release, I am ordering Ms. Bey to sign one.  And, Ms.

6    Ysaguirre, you are to provide a subpoena.

7            I don't know if it's two separate subpoenas, if one

8    has to go to the Office of Court Administration, the other has

9    to go to, I guess -- I don't know if it's the NYPD or what,

10   but whatever -- whoever needs to be -- whoever has the records

11   that are sealed by the -- by 160.50, you need to prepare a

12   subpoena for my signature, and I will sign -- and with the

13   return being the court address.

14           And, Ms. Ysaguirre, my case manager who is on the

15   call, can provide you with -- we have a records room where

16   they bring documents, so that's the return address for the

17   subpoena?

18           We will have the subpoenas signed and then you will

19   serve them just like we're doing with respect to the city with

20   respect to the medical records.  We'll do that for both the

21   160.50 and any providers of medical services to Ms. Bey as a

22   result of the October 9th, 2018 incident.

23           So get those subpoenas and releases to us by next

24   Friday and we will take care of -- we'll -- and put them up on

25   the docket and we'll sign off on them and they'll be there and

1    you can then serve them and they'll send the records to us.

2         The third issue --

3         MS. YSAGUIRRE:  (Indiscernible.)

4         THE COURT:  -- the adequacy of written responses --

5    and this goes for the City and State of New York.  As much as

6    Ms. Bey believes her written responses to date are sufficient,

7    parties are obligated, whether they're pro se or not, to

8    respond in writing separately to each of the requests.  So --

9    just so the other side doesn't have to hunt through voluminous

10   writings to find the answers.  And that's why the written

11   responses have to be made under oath.

12        So to the extent Ms. Bey won't do that, if you want

13   to bring a motion to compel,  go right ahead.  That's your --

14   that's your decision.  I will say, to the extent you can find

15   the answers and make this an easier process for Ms. Bey,

16   please do that.

17        But if you can't and you think -- and you think you

18   need those written responses itemized to each request, make a

19   motion to compel.  Okay?

20        I think we're probably going to need to adjust -- I

21   mean, we're not at depositions yet, and that's -- that will

22   come, but I want the written discovery to be completed first.

23   I don't know if Ms. Bey intends to have depositions, which she

24   will have to bear the expense for, and I'm sure that the State

25   and City --

28

1           MS. BEY:  I can't afford that.  So if it's not --

2           THE COURT:  Okay.

3           MS. BEY:  -- a part of proceedings, I'm not going to

4      be able to do that and so everything will just have to come

5      out at trial.

6           THE COURT:  Okay.  But I'm sure, Ms. Bey, that the

7      defendants will want to take your deposition at their expense,

8      and they will contact you at the right time to arrange that.

9           MS. BEY:  I have no problem.

10          THE COURT:  Okay.  I'm just looking at this

11     discovery schedule.  There -- we're going to adjust the

12     discovery schedule at some point.  It's currently set to close

13     on June 10th and we have a conference scheduled for June 14th

14     at 11:000.

15          I'm going to task the defendants with conferring

16     with Ms. Bey as that date approaches, the date for the close

17     of discovery, June 10th.  If you think you need additional

18     time collectively, as a group, you will write to me no later

19     than -- I'll pull up my calendar to get this right.  No later

20     than June 7th, three days before the close of discovery, and

21     ask for an extension of time, and ask for a specific extension

22     of time if you can agree to it.  We'll -- you know, so I can

23     see exactly when you want things to close, and I, you know, in

24     all likelihood, will give you that extension and adjust the

25     schedule accordingly and adjourn our conference until after

1    that.

2              If you can't agree on an extension, I still want to

3    see that status report on the 7th of June, and the defendants

4    will tell me what they want to do, and they will include what

5    Ms. Bey wants to do.  If she wants to close discovery on June

6    10th, they'll indicate that and the reasons why.

7              If she wants to extend only to July, but the

8    defendants want until August or September, whatever, I need to

9    see each side's position, but that's a document that's going

10   to be crafted by the defendants in consultation with Ms. Bey.

11   Okay?

12             MS. BEY:  I just want to put on a record for

13   everyone here, you have my complete -- again, you have my

14   complete and total compliance.  Like I said, anytime you all

15   send me a request in my email or otherwise, it will get

16   responded to.  And, Your Honor, I hear all of the orders of

17   the Court and I will comply accordingly.

18             THE COURT:  Okay, excellent.  Thank you.

19             Okay, folks, I have a -- I have another conference

20   at noon, so I need to adjourn.  Is there anything else we need

21   to discuss?

22             MS. BEY:  I'm clear.  Peace and love.

23             THE COURT:  Thank you.

24             MS. ROLON:  Not from the city defendants, Your

25   Honor.  Thank you.

1      MS. YSAGUIRRE:  Nothing further from state

2    defendants.

3         THE COURT:  Okay.  Thank you everyone.

4         MS. ROLON:  Thank you, Your Honor.

5    (Proceedings concluded)

6              I, CHRISTINE FIORE, court-approved transcriber

7    and certified electronic reporter and transcriber, certify

8    that the foregoing is a correct transcript from the official

9    electronic sound recording of the proceedings in the above-

10   entitled matter.

11

12

13   _____         April 8, 2022

14      Christine Fiore, CERT

15

16

17

18

19

20

21

22

23

24

25